| 192 | 191 |
|-----|-----|
| 205 | 371 |

## City of Harrisburg v. Isaac W. Guiles, George R. Fleming, S. W. Fleming and H. J. Forney, Appellants.

*Principal and surety—Failure to inform sureties of misconduct of principal.*

Where a judgment, entered by a city against a collector of delinquent taxes and his sureties, by virtue of a warrant of attorney contained in his bond, is attacked by the sureties, only on the ground that the city did not communicate to the sureties the negligence of the collector, the sureties are not relieved from liability for moneys for which the collector failed to account, where it does not appear that the moneys were embezzled or that the city officials wilfully and fraudulently concealed from the sureties the negligence and irregularities of the treasurer in the performance of his official duties.

Argued May 30, 1898. Appeal, No. 9, May T., 1898, by defendants, from order of C. P. Dauphin Co., Jan. T., 1898, No. 17,

discharging rule to open judgment. Before STERRETT, C. J., GREEN, MCCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Rule to set aside execution and to open judgment.

The facts appear by the opinion of MCPHERSON, J., which was as follows :

In November, 1893, the defendant, Guiles, was appointed by the city treasurer of Harrisburg to collect the delinquent taxes of that year, and the other defendants became sureties on his bond —the penal sum being $30,513.02, and the condition being, "That if the said Isaac W. Guiles shall and will well and truly and faithfully account according to law for all taxes charged in the duplicate delivered, or to be delivered, to him by said treasurer, and shall in all respects faithfully perform the duties of his appointment, as prescribed by the laws of the state aforesaid and the ordinances of said city, then this obligation to be void, or else to be and remain in full force and virtue." In October, 1897, the city, taking the ground that Guiles had not accounted for all the taxes with which he was legally chargeable and had broken the condition of his bond in other respects, entered judgment by virtue of a power of attorney contained in the bond, and directed execution to be issued for $6,438.36, with interest from October 15, 1897. This sum had not been ascertained by a previous proceeding, and no suggestion or statement of account was filed with the bond or with the præcipe for the fi. fa. Raising the objection that execution could not issue until the amount really due had been made to appear, either by a hearing on scire facias, or on a rule, or at least by ex parte affidavit or suggestion, the sureties obtained a rule to set aside the writ. This presents the first question for determination, but it need not be discussed. The point is decided in several cases, among others, Weikel v. Long, 55 Pa. 238, Jones v. Dilworth, 63 Pa. 447, and Templeton v. Shakley, 107 Pa. 370, which holds distinctly that upon an obligation such as this an execution in the form adopted by the city may be issued without leave or previous formality, the court having ample power to ascertain afterwards the real debt, and restrain the collection of more than is due.

The rule to set aside the execution is discharged at the petitioners' costs.   Exception to petitioners.

Two other rules were granted, one on the petition of Guiles, and the other on the petition of his sureties, to show cause why the judgment should not be opened in order to admit their respective defenses.   We think it would have been perhaps more appropriate to follow a somewhat different procedure. The judgment is regular and unobjectionable in form; it was entered by virtue of the defendants' warrant of attorney, and is for no more than the penal sum specified in the bond.   Its validity as a judgment is attacked only upon one of the grounds hereafter considered, the duty of the city to communicate to the sureties in November, 1893, its knowledge of the collector's previous conduct, this objection denying that the judgment had ever any real existence.   The other objections arise out of matters that do not attack the judgment at any point, being defenses total or partial based upon events subsequent to the execution of the bond, and should be determined by a different procedure.   Neither method would be precisely applicable to all the questions, but the rule to open is on the whole less appropriate than the other.   It would probably have been more suitable, therefore, to ask the court to inquire, either by the aid of an issue or otherwise, not whether the judgment should be opened, but whether anything, and if anything, how much, was due upon the judgment, and to permit execution accordingly.   This would have been an appeal to the equitable powers of the court, the petition being equivalent to a bill in equity for the purpose of such an inquiry.   But since the matters in controversy have been argued from this point of view, and the parties have agreed that the court shall determine the extent of the defendants' liability, we shall disregard any informality of procedure and pass on to consider the facts and legal principles by which their liability must be measured.

From the evidence laid before us, we find the facts to be as follows: Guiles was appointed collector of delinquent taxes in the city of Harrisburg each year from 1885 to 1893, both inclusive, serving under the Cities' Act of 1874, secs. 35–38, P. L. 249; the short-lived Act of 1887, art. 19, secs. 9–13, P. L. 251, and the present Act of 1889, art. 15, 7–13, P. L. 319.   The act of 1874 fixed no time within which the collector must com-

plete his task and did not require him to make monthly reports or monthly payments, but his account was at all times subject to the supervision of the city controller, who had ample power to call for it, to examine it and to report thereon to councils. The act of 1889 requires the city treasurer to receive the city taxes from the first day of June to the first day of November in each year. On the first day of September three per cent are to be added to all taxes then remaining unpaid, and on the first day of each month thereafter one per cent is to be added until the taxes are fully paid. Upon the first day of November the treasurer must place duplicates of the taxes then unpaid in the hands of collectors (to be appointed by him) with his warrant for collection. Before entering upon his duties each collector is to give bond with sureties to be approved by councils, and is required to proceed immediately to the collection of the taxes charged in the duplicate placed in his hands. At the end of each month he must pay into the treasury all money collected by him during that period, making therewith a return showing by whom and upon what real estate taxes have been paid, in order that the treasurer may satisfy the taxes thus paid upon the duplicate remaining in his office. The collector is allowed five months to collect the taxes charged in his duplicate, but at the end of that period he must settle his account and pay over, not the amount actually collected, but the amount charged against him, except so much as he may be exonerated from collecting by the proper city authorities. At or about the same time he must also deliver to the city treasurer a schedule of the unpaid taxes that are assessed against real estate, with a brief description of the properties, and an affidavit declaring that he could not find sufficient personal property out of which to collect the taxes ; and thereupon the city treasurer must certify the schedule to the city solicitor, by whom the taxes are to be entered in the city lien docket in the office of the prothonotary in order that the tax may become a lien upon the proper real estate.

Before the appointment of Guiles in November, 1893, many of these provisions had been totally disregarded by the collector and by the city officials. Not a single duplicate delivered to him from 1885 to 1892 inclusive had been finally settled by the city controller or by any other department of the municipal

government, and he had never been required to render to any official even a partial account.  He had never made a monthly return to the city treasurer and never delivered a schedule of unpaid taxes against real estate; neither had such return or settlement or schedule been demanded from him by any city authority.  At least, no account or settlement or demand is shown by the testimony, and in this proceeding therefore it must be accepted as true that all persons whose duty it was to collect or receive delinquent taxes, or to supervise the collector's conduct or his accounts, had been grossly negligent for several years preceding November, 1893.  At numerous intervals during this period the collector had paid money into the treasury on account of the duplicates in his hands, the payments having been round sums invariably—$100, $200, $300—and these had been credited upon one or more duplicates as he might specify at the time of payment.  So far as appears, these sums have been received without protest or objection, and they had certainly been received without requiring a detailed statement of the persons and properties from whom they had been obtained.  The city treasurer's books did not show the amount of the duplicates delivered to the collector, as they should have shown and with little difficulty might have shown; and therefore the treasurer could not, and did not, know with accuracy whether at any particular date the collector had paid all the taxes charged against him.  Neither did the treasurer know how much of the money he had received was for tax and how much for penalty; and his accounts were so imperfectly kept, owing to the unrestrained manner in which the collector was allowed to proceed, that he could not know whether the collector had received money and had failed to pay it over, except by the impracticable method of inquiring from every taxpayer whose name appeared upon any of the duplicates.

It is not easy to conceive of a looser method of dealing, or a method more regardless either of the clear intent or of the explicit directions of the law, than had existed for several years (especially since the act of 1889 went into effect) between the city officials and the collector of delinquent taxes.  The fact that city taxes, apparently to a considerable amount, were outstanding and seemed to be unpaid upon the duplicates in his hands, had been known to the municipal officers (including the

councils) during the period from 1885 to 1892 inclusive, but no investigation seems to have been made and no account had ever been required. In spite, however, of all this blamable neglect and indifference to clear statutory commands, the evidence laid before us does not warrant the finding that the defendant Guiles had been guilty of embezzlement previous to November, 1893. We are necessarily confined to what has been alleged and proved in the recent proceeding, and it might therefore be enough to say that neither in the petitions nor the answers is there any charge of embezzlement, nor was any effort made to offer evidence sufficient to justify the conclusion that the collector had been guilty of that crime. No doubt the inference of embezzlement may be drawn, but other inferences are scarcely less probable; for example, that up to that time he had not tried to collect the taxes for which he had not accounted; or that he had tried, but had failed for sufficient reasons; or that he had collected them, but had not been called upon, or had neglected, to pay them over. Each of these theories being possible and fairly consistent with the evidence, the theory of embezzlement is inadmissible. Especially is it inadmissible, because no good reason appears why either party to the pending controversy could not have offered evidence that might have gone far to satisfy us upon this point. For example, the collector's bank account during the years now being considered would certainly have been pertinent and might have been illuminating, but as neither saw fit to present more evidence than is now before the court, we shall not take upon ourselves the grave responsibility of volunteering to draw an inference of crime when neither party has charged it or has tried to prove it clearly. Surely, if a collector is believed to be guilty of embezzling public funds, the proper municipal officials violate a plain duty if they do not prosecute him. Embezzlement will never cease until embezzlers are punished with certainty and promptness. As the evidence does not warrant the finding that the collector had been guilty of crime, it follows that no city official had any reason then to suspect him of crime. But the testimony is ample to justify the conclusion, and we find it as a fact, that the principal city officials did not know that he had been grossly negligent in the discharge of his duty; and we also find that these officials themselves, whose duty it

was either to receive moneys from him, or to supervise his conduct and compel settlement of his accounts, had alike been grossly negligent in leniency toward an unfaithful servant, and in disregard of the law. The sureties were not asked by the city, but by the collector, to become his bondsmen. The facts concerning his failure to settle his accounts, his omission to make monthly returns, the character and dates of his payments, were then matters of public record in the departments of the city and were accessible to any citizen if he cared to inquire; but the sureties made no inquiry concerning the collector's previous conduct, and no representation upon this subject was made to them at any time by any city official. Nothing whatever was said upon either side, either by the sureties or by the officers of the city.

Upon these facts several legal questions arise. The first is this: Did the city officials' knowledge of the collector's previous neglect and misconduct require them to inform the sureties before these assumed the obligations of bondsmen? The sureties contend that the facts already stated imposed a duty upon the city to make known to them what had been the collector's previous conduct; and that failure to speak was fraudulent concealment, whereby they are relieved from liability upon the bond. No doubt, if there has been fraud in the treatment of sureties, if the person to be protected by the bond knows any fact material to the risk and conceals it wilfully, the sureties are usually not bound; but in our opinion the facts now in proof do not support the charge of wilful and fraudulent concealment. No crime is proved to have been committed by the collector before November, 1893; the sureties do not even aver that he had been guilty of embezzlement; and therefore the most that can be said against his conduct is, that he had been guilty of gross negligence in the discharge of his duty. So much was certainly true; he had been dilatory beyond reason; he had been irregular in payments; he had apparently consulted his own convenience as to how and when he should obey the law and discharge the duties of his office. In these respects the city officials had been at least as much in the wrong, for they had always had the power to bring him to account but had chosen instead to acquiesce both in what he did and in what he omitted. Nevertheless, his deeds and misdeeds were irregu-

larities only, however blamable; they fall short of dishonesty and crime; and, this being true, the decided weight of authority supports the conclusion that no duty was imposed upon the city to communicate the facts to the sureties. It is unnecessary to discuss the numerous decisions upon one side or the other that have been discovered by the industry of counsel and noted in their very full and excellent briefs. Many of the cases cited are based upon the proposition, that if the obligee in the bond knows that the principal has been guilty of what may perhaps be called a relevant crime or of conduct equivalent to such a crime, out of such knowledge springs a duty to acquaint the sureties with the fact. Obviously these cases are not applicable to this controversy, since criminal conduct has not yet been made to appear. The decisions we follow hold in positive terms that knowledge of mere irregularities, although these may be serious and extensive, imposes no duty upon the obligee to impart knowledge to the sureties: Bostwick v. Van Voorhis, 91 N. Y. 353; Tapley v. Martin, 116 Mass. 275; Home Ins. Co. v. Holway, 55 Iowa, 571; 39 Am. Rep. 179; R. R. Co. v. Gow, 59 Ga. 685; 27 Am. Rep. 403; Wade v. Mt. Sterling, 33 S. W. Rep. (Ky.) 1113; Screwmen's Benevolent Ass'n v. Smith, 70 Tex. 168. Our own decisions seem to go at least as far as these cases. Without discussing them, we refer to Boreland v. Washington Co., 20 Pa. 150, Wayne v. Bank, 52 Pa. 343, Beyerle v. Hain, 61 Pa. 226, and Bank v. Braden, 145 Pa. 473. The ruling in Bolz v. Stuhl, 4 Pa. Superior Ct. 52, is not in point. There the principal had embezzled the money of a savings society and the trustee had fraudulently concealed the fact from the sureties. We therefore hold that the first defense set up by the sureties is insufficient.

The second defense is of a similar character. The first has to do with the knowledge and conduct of the city in November, 1893, when the sureties' obligation was entered into. The second is founded upon the knowledge and conduct of the city after November, 1893, and rests upon arguments similar to those already rejected. The sureties urge us to find as a fact—although they nowhere aver it and did not prove it—that the defendant Guiles was guilty of embezzling some part of the delinquent taxes of 1893. They add to this the admitted fact that he failed to make the returns or settlement required by

law, and aver that the city knew of the embezzlement and failure to report or settle at least as early as the spring of 1894, and that thereupon it became the duty of the city to communicate these facts to them, arguing that the failure to communicate relieves them from responsibility for any conduct of the collector after the time just named. The facts upon this branch of the case have not yet been found. Briefly they are these: The testimony does not justify us in finding that the defendant Guiles was guilty of embezzling any part of the delinquent taxes of 1893. He seems to have made reports from time to time, for certain papers were offered in evidence which appear to be monthly reports from January, 1894, to February, 1896, inclusive; and although it does not clearly appear whether these reports were punctually made, they have not been attacked upon that ground, and must therefore be regarded as at least a partially successful attempt to comply with the law. The payments made to the treasurer by the collector during this period did not correspond with the amounts he received as shown by his several monthly reports; payment continued to be made in round sums, as in the period before November, 1893. No settlement was made at the end of five months from the delivery of the duplicate into the collector's hands, nor was the schedule of unpaid taxes upon real estate then delivered to the treasurer as required by law. His account for 1893 has never been settled by the controller, and he has never been called upon by any city authority to make such a settlement.

We think there is no essential difference between the collector's omissions and commissions during the period now in question and his conduct during the period previously considered. He was still irregular and slothful and indifferent to his duty, and so the city officials continued to be. Both were alike to blame, but neither can be found to have been guilty of fraud or crime. At the most there were serious irregularities, but of these the city was under no obligation to notify the sureties. It was precisely against such lapses that the sureties' obligation was intended to protect the city, and even if it be conceded (but merely for the purpose of this case) that the city might have been obliged to notify the sureties promptly if the collector had been guilty of embezzlement, no obligation to notify arose out of the facts in proof. This conclusion is supported

by the reasoning of the cases already cited, to which may be added Ry. Co. v. Shaeffer, 59 Pa. 350, recognized in Bank v. Tumbler Co., 172 Pa. 626.

In further answer to both defenses it may also be said with much force that the sureties were bound to take reasonable care of their own interests, both before and after they entered into the obligation now in controversy. Every source of information was as open to them as to any official of the city, both before and after the collector's appointment. Inquiry at the proper office in November, 1893, would have disclosed the fact that the collector's previous accounts for several years were still unsettled, and inquiry afterwards concerning the taxes of 1893 would have brought full information concerning his irregular and dilatory conduct. So also it would have been easy to learn the extent and character of his payments, both before and after the bond was signed. In point of fact, it was stated at the argument and not denied that the sureties did learn more than a year ago that the accounts of the collector were not in a satisfactory state and obtained from him a judgment bond for $6,000 which has been entered for their protection. Laying no weight upon this, however, it seems fair to say that in a case like this, where irregularities simply are charged and knowledge of these may be had by the sureties as easily as by the city, the sureties are quite able to protect themselves, and for this reason alone, if for no other, the city is under no obligation to speak of what they either know already or can learn without difficulty: Cawley v. People, 95 Ill. 249; Ins. Co. v. Mabbett, 18 Wis. 667; State v. Dunn, 11 La. Ann. 549; State v. Rushing, 17 Fla. 223; Magee v. Ins. Co., 92 U. S. 93.

The city urges also, as an additional reply, that the rules invoked by the sureties do not apply to a municipal corporation —that upon grounds of public policy a municipality is not bound by the failure of its officers or agents to disclose, even in cases where individuals and private corporations would certainly be bound to speak. Numerous cases, of which U. S. v. Kirkpatrick, 9 Wheaton, 720, may be taken as a type, and Com. v. Phila., 157 Pa. 558, is probably the latest in Pennsylvania, are cited in support of this position. It need not be considered, however, since the reasons already given seem sufficient to show that the rules relied upon by the sureties do not now apply.

It is also argued that, because the collector was not furnished with a warrant for the taxes of 1893, the sureties cannot be held for any sum that has not been actually collected, although the statute and the bond both charge the collector (and of course his sureties) with the sum named in the duplicate. The facts in this respect are these: No warrant accompanied the duplicate for that year, owing probably to some oversight. The collector could have had the omission supplied at any time, but he never made the request. He never alleged, and does not now allege, that the lack of a warrant prevented him from collecting any tax, and there is no testimony whatever that the absence of a warrant was in the slightest degree a hindrance to collection. Under such circumstances it would be highly technical to say that what did no harm—the mere absence of a writ that he never had occasion to use—should be a sufficient excuse for failure to collect, or still more for failure to account: Com. v. Stambaugh, 164 Pa. 437. If there had been proof that he was not able to collect certain taxes because he had no warrant, a different question might arise, and Cannell v. Crawford Co., 59 Pa. 196, might then have weight in determining the answer. In our opinion that case is not now in point.

Nothing remains except to determine for what sum the city may have execution. This is involved in some uncertainty, but we think it possible to reach a fairly accurate result. It is to be noticed that sections 8 and 9 of the act of 1889 expressly make a collector prima facie liable for the amount of tax charged in the duplicate. This is the sum for which he becomes liable when he accepts the duplicate, and this is the obligation of the sureties on the bond. The word "tax," however, includes the penalty, which by force of the statutes becomes part of the tax: Com. v. Scott, 7 Pa. C. C. R. 409; Titusville's Appeal, 108 Pa. 600. He must "pay over the amount charged against (him) except such sums as (he) may be exonerated from collecting by the proper city authorities." Upon him, therefore, rests the burden of proof to show either that he has collected the whole sum charged or that he is entitled to exoneration for part of it. If the command of the statute is obeyed and a full settlement at the end of five months is required, no difficulty can arise. At the end of that period the collector will be charged with the amount of his duplicate and with the accumulated penalties

thereon to the respective dates when payments were made by the taxpayers. For the sums collected, less his commission, he must account in money. From the taxes remaining unpaid he should be exonerated by the proper city authorities if he shows that they were not collectible, or that they were mistakenly charged against the wrong person or the wrong property, or (if taxes against real estate) that they have been returned to the city treasurer in order to be entered in the lien docket by the city solicitor. These three items—taxes uncollectible, taxes mistakenly charged and taxes chargeable against real estate— ought to cover every dollar of unpaid taxes upon the duplicate, and no difficulty, therefore, should be experienced by a faithful collector in relieving himself from the charge imposed by the law. But, whether faithful or faithless, the burden of proof is put upon him by the statute, and so far as he fails to show a good excuse for failure to collect or failure to account he must bear the burden imposed by the law. Neither sentiment nor favoritism should be allowed to influence the collection of taxes. The law may be stringent, but as long as it is the law it should be strictly obeyed. Taxes will be paid promptly if the law with its full penalty is precisely and unvaryingly enforced.

The amount for which Guiles and his sureties are liable is composed of two items. One is money actually received by him upon the duplicate but not paid over to the city. We find as a fact, from his reports, from his entries in the duplicate, from the books of the city treasurer and from other evidence in the case, that he received upon the duplicate in question taxes and penalties, aggregating $26,973.08. Of this amount he has paid to the city treasurer $24,200, and is entitled to a credit of $1,273.68 for commission, a total credit of $25,473.68. The difference between these two sums debited and credited is $1,499.40, and upon this amount—being money in his hands of which he has had the use—interest is properly chargeable according to the monthly balances appearing from the evidence. The interest has been calculated by the city and appears to be $204.90. The defendants make no objection to the accuracy of the calculation and accordingly we accept it as correct. The total amount, therefore, of the first item is $1,704.30.

The second item for which the defendants are liable is the amount apparently uncollected upon the duplicate. As already

stated, the Cities' Act of 1889 casts upon the collector the burden of proof in accounting for this item, and since he has made no attempt to account for it, the charge imposed by the law continues. In effect, he is presumed to have collected it if he fails to account for it otherwise, and must be treated as if the money had actually been received, and indeed it may have all been received, for anything that appears to the contrary. It is enough, however, that section 9 of the act requires him to "pay over the amount charged" in the duplicate, less exonerations.

*Errors assigned* were (1) in finding that Guiles had not been guilty of embezzlement prior to November, 1893; (2) that neither the petitions of the defendants nor the answers of the city charged Guiles with embezzlement; (3) that no city official had any reason to suspect Guiles of crime prior to November, 1893; (4) in holding as matter of law that the city officials' knowledge of the collector's previous neglect and misconduct did not require them to inform the sureties thereof before the latter assumed the obligation of bondsmen; (5) that the wilful neglect of the city of Harrisburg to examine the accounts of Guiles from time to time, and his knowledge of his gross delinquencies prior to November, 1893, did not relieve the sureties from liability; (6) that the sureties were liable for anything done or omitted by Guiles, after the expiration of his term of office, which was five months from November 29, 1893, the date when he received the tax duplicate; (7) that although Guiles did not have a warrant, his sureties are liable for such taxes as he did not collect; (8) in the computation of the amount due by the sureties in charging against them five per centum penalty on taxes uncollected and outstanding, which penalty had accrued prior to the appointment of the tax collector, but which had not been charged in the duplicate delivered to him; (9) in deciding that the sureties were not relieved from all liability; (10) in deciding that the sureties were liable for the taxes uncollected and outstanding.

*W. M. Hargest* and *C. H. Bergner,* with them *Thomas S. S. Hargest,* for appellants.—The sureties were relieved by the failure of the city officials to inform them of the misconduct of the collector: Lee v. Jones, 108 Eng. Com. Law Rep. 386 ; Railton

v. Mathews, 10 Cl. & F. 934; Hamilton v. Watson, 12 Cl. & F. 108; Franklin Bank v. Cooper, 39 Me. 551; Harrison v. Lumbermen Ins. Co., 8 Mo. App. 37; R. R. v. Ling, 18 S. C. 116; Wayne v. Com. Nat. Bank, 52 Pa. 343; Bolz v. Stuhl, 4 Pa. Superior Ct. 52; State of Vermont v. Bates, 36 Vt. 387; Mayor of Newark v. Dickerson, 45 N. J. L. 38; Sooyads v. State, 39 N. J. L. 135; Lewiston v. Gagne, 89 Me. 395; Com. v. Knettle, 182 Pa. 176.

*D. S. Seitz,* city solicitor, and *M. W. Jacobs,* for appellee.— In the absence of inquiry, a creditor is not bound to communicate to sureties all material facts or all the circumstances that may affect their undertaking: Beyerle v. Hain, 61 Pa. 226; Bank v. Braden, 145 Pa. 473; Boreland v. Washington County, 20 Pa. 150; Magee v. Ins. Co., 92 U. S. 93; Lake v. Thomas, 84 Md. 608; 36 Atl. Rep. 437; Ham v. Greve, 34 Ind. 18; Atlas Bank v. Brownell, 9 R. I. 168; 11 Am. Rep. 231; Screwmen's Benevolent Assn. v. Smith, 70 Tex. 168; North Brit. Ins. Co. v. Lloyd, 10 Exch. 523.

Failure of the obligee to disclose to the sureties the previous indebtedness or default of their principal, when not requested so to do, is not sufficient to avoid bond: Domestic Sewing Machine Co. v. Jackson, 15 Lea, 418; Anaheim Union Water Co. v. Parker, 101 Cal. 483; Bowne v. Bank, 45 N. J. L. 360; Howe Mach. Co. v. Farrington, 82 N. Y. 121; Home Ins. Co. v. Holway, 55 Iowa, 571; 39 Am. Rep. 179; State v. Rushing, 17 Fla. 226; R. R. Co. v. Ling, 18 S. C. 116; Wade v. City of Mt. Sterling, 33 S. W. Rep. (Ky.) 1113; State v. Dunn, 11 La. Ann. 549; Cawley v. People, 95 Ill. 249; Ætna Ins. Co. v. Mabbett, 18 Wis. 667.

Nor is failure to disclose the fact that the principal has been, in his previous employment, guilty of negligence or of irregularities, not involving moral turpitude, sufficient: Bostwick v. Van Voorhis, 91 N. Y. 353; Lake v. Thomas, 84 Md. 608; Charlotte, etc., R. R. Co. v. Gow, 59 Ga. 689; Screwmen's Benevolent Assn. v. Smith, 70 Texas, 168.

Nothing short of dishonesty need be disclosed: R. R. Co. v. Gow, 59 Ga. 685; 27 Am. Rep. 403; Screwmen's Benevolent Assn. v. Smith, 70 Texas, 168; Tapley v. Martin, 116 Mass. 275; Bostwick v. Van Voorhis, 91 N. Y. 353; Bank v. Owen,

101 Mo. 558; Bowne v. Bank, 45 N. J. L. 360; Cawley v. People, 95 Ill. 249.

OPINION BY MR. JUSTICE McCOLLUM, July 19, 1899:

Isaac W. Guiles was appointed by the treasurer of the city of Harrisburg collector of the unpaid taxes for the year 1893. He entered into a bond to the city in the sum of $30,513.02 with the appellants as sureties. The condition of the obligation was that "if he faithfully accounted, according to law, for all taxes charged in the duplicate delivered or to be delivered to him by said treasurer, and in all respects faithfully performed the duties of his appointment as prescribed by the laws of Pennsylvania and the ordinances of the city of Harrisburg, then the obligation to be void, or else to be and remain in full force and virtue." As he failed in the performance of the duty imposed by his appointment the city entered judgment on the bond and issued execution thereon. The appellants alleging that the execution was improvidently issued petitioned the court to set it aside. On this petition a rule to show cause why the execution should not be set aside was granted, pending which the writ was stayed, lien of levy remaining. In another petition filed subsequent to the petition already referred to, the appellants claim, inter alia, that they were relieved from liability on the bond in question by the fraudulent concealment by the city officials of the misconduct of Guiles as collector of delinquent taxes from and including the year 1885 down to and including the year 1893. They also charge the city officials with wilful neglect of their duties pertaining to the collection of said taxes. On this petition the appellants prayed for and obtained a rule to show cause why judgment should not be opened to enable them to interpose their defense to it. Upon a full hearing had on the rule to show cause the court below held that the claim and charge aforesaid were not warranted by the evidence and, having ascertained the amount due to the city from the collector and his sureties, discharged the rule to show cause and allowed the execution on the judgment to proceed for the sum due, with interest thereon from October 15, 1897. S. W. Fleming and H. J. Forney, two of the sureties on the bond, being dissatisfied with the decision of the court below, appealed from it.

The principal question raised by the assignments of error is

whether the negligence of Guiles in the performance of the duty imposed by his appointment and the neglect of the city officials to bring him to account as they might have done relieves the sureties from liability on the bond. In considering this question we must have in view the facts as found by the court below and the evidence on which they were based. In the first place we note the absence of any charge in either of the petitions filed by the sureties that Guiles was guilty of embezzlement, and of any evidence submitted on the hearing which would support such a charge if made. We notice also that there is no evidence in the case which can be considered as sufficient to establish wilful and fraudulent concealment from the sureties by the city officials of the negligence and misconduct of Guiles in his capacity of collector of taxes. These are the conclusions reached by the learned court below upon a careful and impartial consideration of the evidence, which seems to us quite sufficient to sustain them. We certainly fail to discover in the evidence any warrant for an inference which would justify us in reversing them. As it was not shown that Guiles embezzled the money of the city, or that the city officials wilfully and fraudulently concealed from the sureties his negligence and irregularities in the performance of his duties as collector, there is no discoverable ground for relieving the sureties from liability on the bond. The assignments from four to ten inclusive do not require special notice. They relate to matters properly disposed of in the elaborate opinion of the court below and need not be discussed here.

The assignments are dismissed and the judgment is affirmed.