## Hartford Accident & Indemnity Co. v. Ominsky

C. *Gilpin Gibbon* and *Roger A. White*, for plaintiff.
*Martin Feldman*, for defendant.

SLOANE, P. J., June 19, 1958.—These are prelimi-
nary objections by only one defendant, Ominsky, a
former coroner of Philadelphia, to plaintiff's complaint
in trespass (negligence) for $17,675. Plaintiff, a
surety company, on its written bond to the City of
Philadelphia as obligee-insured, paid this amount to
the city, and now, as subrogee to the city, seeks a like
amount from Ominsky and the other two defendants.
In short, the claim is that defendant, as coroner, alone
or with the other defendants, was negligent in several
alleged respects in allowing moneys and other property
of dead persons in the morgue and under his control to
be taken by persons not entitled thereto.

There are several arguments but they must yield
to clearer perception: One, that as coroner, defendant
was not an "employe" of the city as defined in plain-
tiff's bond to the city, and then that as to defendant,
plaintiff's payment to the city was as a volunteer, and
therefore not to be recovered from defendant. See The
Employers' Liability Assurance Corporation, Ltd., v.

Eaby, 111 Pa. Superior Ct. 589. No doubt, the definition of employes as a group, section 2 of the bond, whose faithful performances as employes are warranted, does not include the separate city official who must be separately bonded. And there is no doubt that defendant, as coroner of the County of Philadelphia, which is what he was when he took office, was required by law to be separately bonded: 16 PS §7532. In that capacity, he took office in January 1950. But in November 1951, by reason of the City-County Consolidation Amendment, defendant became coroner of the City of Philadelphia. And the "real and designed result [of the amendment] was that, when the former county officers became city officers and the former county employes city employes, they automatically became subject thereby to the laws then in effect governing and regulating city officers and employes, and also, of course, to any such laws as might thereafter become effective": Lennox v. Clark, 372 Pa. 355, 366.

So that as of April 1951, the date the Philadelphia Home Rule Charter was adopted, defendant was a city employe under the charter. By section 8-302 of the charter the coroner was not required to post his individual bond. It follows that as of January 1, 1953, the initial date of the period of the alleged loss set forth in the complaint, defendant was not a person "employed by the insured . . . required by law to furnish individual bond to qualify for office": Bond, section 2. Assuming the continuance of defendant's bond as county coroner after April 1951, there was still no exclusion of defendant from plaintiff's bond to the city, and plaintiff's payment to the city under its bond was no inclusion of the "volunteer" doctrine. Plaintiff was obligated to make good to the city for any losses by reason of defendant's failure or omission, as alleged by plaintiff, to account for the dead persons' moneys or other personalty.

There was an Ordinance of 1953, page 549, under which the functions of the coroner were transferred to the Department of Public Health. Defendant insists he cannot be responsible for the dead persons' moneys since, under the ordinance, it was not his function to take care of those moneys. That may be so, but if under preliminary objections we must face plaintiff's allegations as facts, defendant was in fact, on plaintiff's allegation, the one in charge of the moneys, and if defendant was so, which remains for proof at trial, it will not help him that he was not required to be so. Defendant, if he undertook that function, as alleged, is required to do it with due care. See Pascarella v. Kelley, 378 Pa. 18, 23. Whether defendant failed in that pertinent regard, or his subordinates failed, raises no question of imputed negligence or respondeat superior, since the allegation is that defendant himself failed. This lets us put aside any decision on the liability of a public officer for the misdoings of his subordinates.

The question to be decided here as to a cause of action by this plaintiff against defendant depends in part upon a finding that the city through whom plaintiff claims could have sued defendant. Whatever the situation in Philadelphia before 1951, after the City-County Consolidation Amendment the coroner held these custodial properties as an officer of the city and not as a personal obligation between the coroner and the proper representatives of the dead persons from whom the property was taken. The primary indebtedness was between the city and these representatives. Therefore any loss of such properties was a loss to the city during the period under consideration here, January 1953 to May 1953. Whether the city could sue for such loss is a question untested in this jurisdiction. A municipality, in this Commonwealth, can sue its officers and employes for intentional wrongs. See City of

Pittsburgh v. Ihrig, 256 Pa. 410; City of Harrisburg v. Guiles, 192 Pa. 191; City of Philadelphia v. Toner, 68 D. & C. 280. But at least one professional authority has suggested a distinction between intentional wrongs and unintentional torts, the latter being regarded as inadequate ground for a suit between a government and one of its employes. See Davis, Administrative Officers' Tort Liability, 55 Mich. Law Review 201. The Supreme Court of the United States (United States v. Gilman, 347 U. S. 507), held that the Government could not get indemnification from a government employe on account of whose negligence recovery had been successfully sought under the Federal Tort Claims Act of June 25, 1948.

"Discipline of the employee, the exactions which may be made of him, the merits or demerits he may suffer, the rate of his promotion are of great consequence to those who make government service their career. The right of the employer to sue the employee is a form of discipline. . . . Moreover, the suits that would be brought would haul the employee to court and require him to find a lawyer, to face his employer's charge, and to submit to the ordeal of a trial. The time out for the trial and its preparation, plus the out-of-pocket expenses, might well impose on the employee a heavier financial burden than the loss of his seniority or a demotion in rank. . . . Perhaps the cost in the morale and efficiency of employees would be too high a price to pay for the rule of indemnity . . .": United States v. Gilman, supra, pp. 509-10.

New York stamped a different emphasis. Where public funds are involved, it was held officers and employes are liable without fault: Indemnity Ins. Co. of North America v. Farkas, 195 Misc. 554, 89 N. Y. S. 2d 741 (Sup. Ct. App. Term). In a case involving private property deposited in a custodial account, the New

York courts held an officer liable for a theft by his employe without neglect by the officer: City of New York v. Fox. 232 N. Y. 167, 133 N. E. 434.

In the abstract Professor Davis' conclusion may be sound: "When the public gets the benefit of a program, the public should pay for the torts that may be expected in carrying out the program. The only satisfactory solution of many problems about liability of officers and employees is to compensate the plaintiff but to hold the officer or employee immune": Davis, Administrative Officer's Tort Liability, 55 Mich. Law Review 201, 233. Again, as in most phases of law, we weigh conflicting important doctrines and think out our choice.

With due deference, we still cannot join to a consensus with the Gilman case and Professor Davis. In this jurisdiction, a public officer whose duties are ministerial in nature has been held liable to persons injured by his failure to act with due care. See A. Salus & Son, Inc., v. Kohn, 38 D. & C. 401. See 4 McQuillin, Municipal Corporations, §12.223 at page 191. If indemnity were denied to the city, and therefore to the subrogee, its surety, unfortunate results must follow. First, ultimate liability for a tortious act by a municipal officer or employe would fall by accident of order of suit: On the officer or employe if the initial action is by injured third persons; on the city if the initial claim is against the city. Second, in cases in which Philadelphia could exercise its sovereign immunity it would be more likely to do so if it had no right of indemnity from tortious employes. Finally, the cost of obtaining a city bond might well increase considerably if the surety were prevented from seeking recovery against the wrongdoer.

Defendant urges that the complaint is deficient in form in two respects: That the damages are not pleaded with sufficient particularity; that plaintiff is not the

real party in interest. Should defendant succeed in showing that he was not in fact the person in charge of the moneys after the Ordinance of October 16, 1953, plaintiff will have to show when various losses took place. But as a matter of pleading the lump sum is sufficient here, particularly since the audit upon which the claim is based is a matter of public record and since a copy is in defendant's hands. This audit presumably contains all the information it is possible to garner about the dates of loss.

In Spires v. Hanover Fire Insurance Company, 364 Pa. 52, 57-58, the Supreme Court stated: "the real party in interest in any given contract or chose in action is the person who can discharge the duties created and control an action brought to enforce rights. . . . To be the real party in interest one must not merely have *an interest in the result of the action* but must be *in such command of the action* as to be legally entitled to give a complete acquittance or discharge to the other party upon performance." See also Goodrich-Amram, Procedural Rules Service, §2002(a)-3.

Defendant argues that in this sense plaintiff is not the real party in interest. In the absence of an averment that the heirs and estates of the persons whose moneys are alleged to be missing have been repaid, defendant contends plaintiff cannot give a "complete acquittance or discharge" to him. But first, in all probability the moneys are now the property of the city. See Act of June 12, 1893, P. L. 457, as amended, 16 PS §8437. This section permits sale of the property after one year after advertising in a newspaper once a week for three weeks. The proceeds are to be paid into the county, or, in Philadelphia, the city, treasury. See Act of 1893, as amended, 16 PS §8438.

Second, even if the property equitably belongs to third persons, the city's recovery against defendant on plaintiff's bond would block the suit by third per-

sons against defendant. Their action would be against the city as trustee of the resulting trust of the recovered funds. The case is no different where plaintiff here, having paid the city, sues as subrogee. An analogy to trust law may clarify the point. If A, an agent of T, the trustee, embezzles funds in which equitable title is in B, the beneficiary, suit by T against A deprives B of an action he would otherwise have, after the time for distribution arises, if not before, against A. His remedy is against T. So here the only action by third persons will be against the city.

We might note that we do not pass upon any question of the statute of limitations, this being an affirmative defense, not for preliminary objections. See Pa. R. C. P. 1030, 1045.

The preliminary objections are overruled. Defendant has the right to plead over within 20 days hereof.