UNITED STATES *v.* GILMAN.

No. 449.   Argued March 10–11, 1954.—Decided May 17, 1954.

*Paul A. Sweeney* argued the cause for the United States. With him on the brief were *Robert L. Stern,* then Acting Solicitor General, and *Assistant Attorney General Burger.*

*William C. Wetherbee* argued the cause for respondent. With him on the brief was *Paul J. Sedgwick.*

*Richard W. Galiher* and *Richard L. Williams* filed a brief for Harrison, as *amicus curiae,* supporting respondent.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

The single question in the case is whether the United States may recover indemnity from one of its employees after it has been held liable under the Federal Tort Claims Act,[1] 60 Stat. 842, 28 U. S. C. §§ 1346, 2671 *et seq.,* for the negligence of the employee.

---

[1] The Act provides in pertinent part as follows:

SEC. 1346.   (b) "Subject to the provisions of chapter 171 of this title, the district courts, together with the District Court for the Territory of Alaska, the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by

Respondent, an employee of the United States, had a collision with the car of one Darnell, while respondent was driving a government automobile. Darnell sued the United States under the Tort Claims Act. The United States filed a third-party complaint against respondent, asking that if it should be held liable to Darnell, it have indemnity from respondent. The District Court found that Darnell's injuries were caused solely by the negligence of respondent, acting within the scope of his employment. It entered judgment against the United States for $5,500 and judgment over for the United States in the same amount. The Court of Appeals reversed the judgment against respondent by a divided vote. 206 F. 2d 846. The case is here on writ of certiorari. 346 U. S. 914.

Petitioner's argument is that the right of indemnity, though not expressly granted by the Tort Claims Act, is to be implied. A private employer, it is said, has a common-law right of indemnity against an employee whose negligence has made the employer liable. The Tort Claims Act, by imposing liability on the United States for the negligent acts of its employees, has placed it in the general position of a private employer. Therefore, it should have the comparable right of indemnity against

the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

SEC. 2674. "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages. . . ."

SEC. 2676. "The judgment in an action under section 1346 (b) of this title shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim."

the negligent employee which private employers have. *United States* v. *Yellow Cab Co.*, 340 U. S. 543, is said to show the way. For there we held that the United States could be sued as a third-party defendant for contributions claimed by a joint tort-feasor, though no specific provision of the Tort Claims Act provided for such suits.

In that case, however, we were dealing with an established type of liability, which was within the broad sweep of the claims for which the United States had agreed to stand liable. Since the claim was within the class covered by the waiver of sovereign immunity, the Court refused to restrict its enforcement to separate actions for contribution.

The present case is quite different. We deal not with the liability of the United States, but with the liability of its employees. The Tort Claims Act does not touch the liability of the employees except in one respect: by 28 U. S. C. § 2676 it makes the judgment against the United States "a complete bar" to any action by the claimant against the employee. And see § 2672.

The relations between the United States and its employees have presented a myriad of problems with which the Congress over the years has dealt. Tenure, retirement, discharge, veterans' preferences, the responsibility of the United States to some employees for negligent acts of other employees—these are a few of the aspects of the problem on which Congress has legislated. Government employment gives rise to policy questions of great import, both to the employees and to the Executive and Legislative Branches. On the employee side are questions of considerable import. Discipline of the employee, the exactions which may be made of him, the merits or demerits he may suffer, the rate of his promotion are of great consequence to those who make government service their career. The right of the employer to sue

the employee is a form of discipline. Perhaps the suits which would be instituted under the rule which petitioner asks would mostly be brought only when the employee carried insurance. But the decision we could fashion could have no such limitations, since we deal only with a rule of indemnity which is utterly independent of any underwriting of the liability. Moreover, the suits that would be brought would haul the employee to court and require him to find a lawyer, to face his employer's charge, and to submit to the ordeal of a trial. The time out for the trial and its preparation, plus the out-of-pocket expenses, might well impose on the employee a heavier financial burden than the loss of his seniority or a demotion in rank. When the United States sues an employee and takes him to court, it lays the heavy hand of discipline on him, as onerous to the employee perhaps as any measure the employer might take, except discharge itself.

On the government side are questions of employee morale and fiscal policy. We have no way of knowing what the impact of the rule of indemnity we are asked to create might be. But we do know the question has serious aspects—considerations that pertain to the financial ability of employees, to their efficiency, to their morale. These are all important to the Executive Branch. The financial burden placed on the United States by the Tort Claims Act also raises important questions of fiscal policy. A part of that fiscal problem is the question of reimbursement of the United States for the losses it suffers as a result of the waiver of its sovereign immunity. Perhaps the losses suffered are so great that government employees should be required to carry part of the burden. Perhaps the cost in the morale and efficiency of employees would be too high a price to pay for the rule of indemnity the petitioner now asks us to write into the Tort Claims Act.

We had an analogous problem before us in *United States* v. *Standard Oil Co.,* 332 U. S. 301, where the United States sued the owner and driver of a truck for the negligent injury of a soldier in the Army of the United States, claiming damages for loss of the soldier's service during the period of his disability. We were asked to extend the common-law action of *per quod servitium amisit* to the government-soldier relation. We declined, stating that the problem involved federal fiscal affairs over which Congress, not the Court, should formulate the policy.

The reasons for following that course in the present case are even more compelling. Here a complex of relations between federal agencies and their staffs is involved. Moreover, the claim now asserted, though the product of a law Congress passed, is a matter on which Congress has not taken a position. It presents questions of policy on which Congress has not spoken.[2] The selection of that

---

[2] Though the legislative history of the Act is not too helpful on this issue, such indications as there are point toward the result we reach. The Court recently made an extensive review of the history of the Tort Claims Act in *Dalehite* v. *United States,* 346 U. S. 15, 24–30. As there explained, much of its relevant history appears in the Seventy-seventh Congress, rather than in the Seventy-ninth Congress, which enacted it. In the Seventy-seventh Congress the bill took substantially the form in which it was finally enacted by the Seventy-ninth Congress.

At the hearings before the House Judiciary Committee of the Seventy-seventh Congress, the question of the liability of government employees arose. Mr. Francis M. Shea, then Assistant Attorney General, explained the Government's position. In discussing the provision for administrative settlement of small claims (which is now 28 U. S. C. § 2672), Mr. Shea was questioned concerning the clause under which acceptance of an award by the claimant constitutes a release of all claims against the employee, as well as against the United States. The present § 2672 has much the same effect as § 2676, which makes a judgment against the United States a bar to action against the employee. See note 1, *supra.* Mr. Shea's state-

policy which is most advantageous to the whole involves
a host of considerations that must be weighed and ap-

---

ments concerning the administrative settlement provision therefore
have some relevance to the issue in the present case.

"Mr. SPRINGER. I would like to direct your attention, Mr. Shea,
to line 19. Why do you provide this acceptance of the award as
constituting a bar to the claim against the employee? Is that the
intention of the provision, and what is the ultimate purpose of it?

"Mr. SHEA. . . . It has been found that the Government, through
the Department of Justice, is constantly being called on by the heads
of the various agencies to go in and defend, we will say, a person
who is driving a mail truck when suit is brought against him for
damages or injuries caused while he was operating the truck within
the scope of his duties. Allegations of negligence are usually made.
It has been found, over long years of experience, that unless the
Government is willing to go in and defend such persons the conse-
quence is a very real attack upon the morale of the services. Most
of these persons are not in a position to stand or defend large damage
suits, and they are of course not generally in a position to secure
the kind of insurance which one would if one were driving for himself.

"If the Government has satisfied a claim which is made on account
of a collision between a truck carrying mail and a private car, that
should, in our judgment, be the end of it. After the claimant has
obtained satisfaction of his claim from the Government, either by a
judgment or by an administrative award, he should not be able to
turn around and sue the driver of the truck. If he could sue the
driver of the truck, we would have to go in and defend the driver
in the suit brought against him, and there will thus be continued a
very substantial burden which the Government has had to bear in
conducting the defense of post-office drivers and other Government
employees.

"Mr. McLAUGHLIN. Have you considered the practice followed by
large corporations and railway companies with respect to defense
of employees who are joined as defendants in negligence actions?

"Mr. SHEA. I should think that what ordinarily happens in the
case of an accident caused by a driver for a big corporation is that
suit is brought jointly against the two, and usually it is satisfied by
the corporation, and then ordinarily the corporation's remedy against
the driver is to fire him if he is negligent too often. Ordinarily

praised. That function is more appropriately for those who write the laws, rather than for those who interpret them.

*Affirmed.*

---

the corporations cover such risks by insurance, which is paid for by the employer, I think.

"The CHAIRMAN. Mr. Shea, you are discussing and directing your remarks to the matter where, if a person is injured and files a claim against the Government and the Government satisfies that claim, that is the end of the claim against anybody?

"Mr. SHEA. That is right.

"The CHAIRMAN. What is the arrangement when the government has an employee who is guilty of gross negligence and injury results? Is there any requirement that that employee should in any way respond to the Government if it has to pay for the injury, in the event of gross negligence?

"Mr. SHEA. Not if he is a Government employee. Under those circumstances, the remedy is to fire the employee.

"Mr. McLAUGHLIN. No right of subrogation is set up?

"Mr. SHEA. Not against the employee."

See Hearings before the House Committee on the Judiciary on H. R. 5373 and H. R. 6463, 77th Cong., 2d Sess., pp. 9–10. See also S. Rep. No. 1196, 77th Cong., 2d Sess., p. 5.