George A. ROWLEY, Administrator of the Estate of Phillip Yolland Woods, Deceased, Plaintiff,

v.

UNITED STATES of America, Defendant and Third Party Plaintiff,

AMERICAN CASUALTY COMPANY, of Reading, Pennsylvania, and American Aviation and General Insurance Company, Third Party Defendants.

No. C–110–55.

United States District Court
D. Utah, Central Division.

April 20, 1956.

Edward F. Richards, Gustin, Richards & Mattsson, Salt Lake City, for plaintiff.

A. Pratt Kesler, U. S. Atty. for Dist. of Utah, Salt Lake City, for U. S.

Rex J. Hanson, Hanson & Baldwin, Salt Lake City, for third party defendants.

CHRISTENSON, District Judge.

Plaintiff administrator brought this action under the Tort Claims Act, 28 U. S.C.A. § 1346(b), against the United States on behalf of the heirs of Phillip Yolland Woods, deceased, for damages for the death of said deceased who allegedly was killed in a collision between a motorcycle owned and operated by him

and an automobile owned by one John Jay Colzani, and being operated by the latter in the course of his work for the United States Post Office Department in delivering mail.

Following the pretrial conference, the Government asked for, and was granted, leave to file a third party claim against the American Aviation and General Insurance Company under Rule 14(a), Federal Rules of Civil Procedure, 28 U. S.C.A., alleging that at the time of the collision Colzani had a contract of insurance insuring "any person or organization legally responsible for the use of the automobile of the said John Jay Colzani for any bodily injury or property damage resulting from the authorized use of said automobile." The third party defendant moved to dismiss the third party complaint upon the ground that it failed to state a claim upon which relief could be granted. On the day this motion was set for argument counsel for all of the parties announced to the Court that an agreement of settlement had been reached, subject to the Court's approval, providing that judgment should be entered in plaintiff's favor against the Government for a portion, and against the insurance company for a portion, of an agreed amount constituting settlement of the death claim. In addition, the insurance company would undertake to defend any action for damages to the deceased's motorcycle and to satisfy any resulting judgment.

The question now to be determined is whether the Court should approve such settlement as it affects the United States. Considerations which have given the Court pause are that if the Government is entitled to a judgment over against the insurance company for its liability, if any, to plaintiff, no reason appears why the insurance company should be relieved of its responsibility, even in part, at the expense of the Government; and if the insurance company is not responsible to the Government under the policy, no reason appears why the Government should accept even partial indemnity on such liability as the Government may have. In either event, it appears to be the Court's duty to decide the law of the case, as well as to determine the primary liability, if any, of the Government to the plaintiff, and a decision, if made, would necessarily be fully one way or another. Thus, the Court cannot accept the settlement merely because of uncertainty as to what some other agency might do.

Other collateral considerations have suggested themselves, which have a bearing in ordinary cases of compromise. It might cost the Government the amount of its stipulated contribution to fully litigate the case. If the Government's original interpretation of the policy and its rights thereunder proved in error, it would be getting substantial assistance which it would not receive if the settlement were not consummated. The total settlement might be less than would be awarded to the plaintiff upon a trial, irrespective of which party might be called upon to pay it. Since no ruling has yet been made upon the motion to dismiss the third party complaint, it may be that even though the Government is covered as an "insured" under the liability policy, its responsibility may not be determinable in this particular action because of the "no action clause" in the policy, leaving the Government to seek relief against the insurer in a separate action thereafter.

It is believed that these latter considerations must be rejected. The immediate cost of sustaining a right of this kind ordinarily should not induce its surrender by the Government in absence of other compelling reasons; nor would it appear sound for the Government to permit an insurer to avoid its responsibility by threat, either express or implied, of subjecting the Government to additional expense through refusal to voluntarily assume its responsibility. On the other hand, if the policy does not obligate the insurance company to assume the Government's liability, it is equally unseemly that the United States should take advantage of an unjustifiable position to get something from the company by way

of compromise. The United States should not be placed in the position of asking or receiving charity under such circumstances.

As to the decision on the pending motion, either way it should not control the ultimate result, since the very clause of the policy upon which the insurer relies is a recognition that if it may not be joined in this action, it would nevertheless, be liable in a separate action to pay any judgment which may result. The granting of the insurer's pending motion would, in any event, be without prejudice to the right of the Government to apply later for relief against the insurer. Pitcairn v. Rumsey, D.C.W.D.Mich.S.D. 1940, 32 F.Supp. 146. So we return to the basic query of whether there is anything before the Court which indicates that the insurance company would not be ultimately liable under its policy for any recovery against the Government herein, or whether there is such uncertainty on the question, not my duty to resolve, which might justify a compromise of the nature proposed.

I have before me the policy. It has not been suggested that it was not in force at the time of the collision or that the obligations of the insured were not fully performed or that it was not, or is not, effective according to its terms. It is adequate in amount to cover any prospective recovery herein. It is in the name of John J. Colzani. It covers the automobile involved in the action. Mr. Colzani's occupation is noted as "Insurance and U. S. Mail". The purposes for which the automobile is to be used are expressed as "business and pleasure". Under the Insuring Agreements as to "Coverage A", it obligates the insurer, among other things:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile."

The policy also obligates the company to defend any suit against the "insured" to the extent covered by the policy whether such suit is groundless or not. The definition of the "insured" is as follows:

"With respect to the insurance for bodily injury liability" (other portions of the policy indicate this includes death) "and for property damage liability the unqualified word 'insured' includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. * * * "

Other provisions in this paragraph are not relevant here.

The provision upon which the company especially relies in support of its motion is:

"6. Action Against Company—Coverages A and B.

"No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company. * * *

"16. Assistance and Cooperation of the Insured—Coverages A, B, D, E, F, G, H, I & J.

" * * * Nothing contained in this policy shall give any person or organization any right to join the company as a co-defendant in any action against the insured to determine the insured's liability."

I have been unable to find any cases in point on the position of the Government as an "insured" under such policy provisions as are here involved, where the

298

primary liability is asserted under the Tort Claims Act. In principle, there seems no reason why it should not have the benefit of such a policy to the same extent as any other entity coming within the definition of an "insured", notwithstanding that it can have no relief directly against the person in whose name the policy was issued. See Gilman v. United States, 9 Cir., 1953, 206 F.2d 846, affirmed 347 U.S. 507, 74 S.Ct. 695, 98 L.Ed. 898; Sullivan v. United States, D.C.N.D.Ill.1954, 120 F.Supp. 217.

Absent some showing that the policy is unenforceable, these provisions, read in connection with the entire policy, in my opinion clearly establish the responsibility of the insurer to ultimately pay such judgment as may be recovered by plaintiff against the Government herein; and they probably demonstrate, in view of the weight of authority and reason, that the liability of the company may be determined in this action. Final decision on the latter point is reserved until the parties have had the opportunity to argue the insurance company's motion to dismiss the third party complaint, should they desire to do so.

I list authorities which have led me to the conclusions indicated, both with respect to the ultimate responsibility of the insurance company and tentatively as to its suability in this action: Pioneer Mut. Compensation Co. v. Cosby, 125 Colo. 468, 244 P.2d 1089; Jordon v. Stephens, D.C.W.D.Mo.W.D.1945, 7 F.R. D. 140; John R. Alley & Co., Inc., v. Federal Nat. Bank of Shawnee, 10 Cir., 1942, 124 F.2d 995; Tullgren v. Jasper, D.C. D.Md.1939, 27 F.Supp. 413; 3 Moore's Federal Practice, 2d. Ed., para. 14.12; Annotation, Construction and Application of Express Provisions of Policy That No Action Shall Lie Against Insurer Until Amount of the Insured's Obligation to Pay Shall Have Been Finally Determined, 159 A.L.R. 762.

Compare other cases, most of which were decided in view of local statutes or rules, or without reference to Federal Rules of Civil Procedure: Pitcairn v. Rumsey, D.C.W.D.Mich.S.D., 1940, 32 F.

Supp. 146; Fisher v. Home Indemnity Co., 5 Cir., 1952, 198 F.2d 218; Breeden v. Wilson, 58 N.M. 517, 273 P.2d 376; Hagerhorst v. Indemnity Ins. Co. of North America, D.C.E.D.Mo.E.D., 1939, 30 F.Supp. 152; Seaborn v. Preferred Acc. Ins. Co. of New York, 206 Okl. 626, 246 P.2d 365.

The provisions of the Tort Claims Act requiring the approval of settlements by the Court must contemplate a duty for the Court to satisfy itself that a settlement is reasonable and proper before approving it, 28 U.S.C.A. § 2677; Hubsch v. United States, 338 U.S. 440, 70 S.Ct. 225, 94 L.Ed. 244. Perceiving no reason on the basis of the facts and circumstances made known to me why the insurance company should not assume responsibility for any liability the Government may bear to the plaintiff, I believe it to be my duty to withhold approval of the tendered settlement.