Robert J. IRVIN, Plaintiff,

v.

UNITED STATES of America, Defendant and Third Party Plaintiff,

The STATE AUTOMOBILE INSURANCE ASSOCIATION, Des Moines, Iowa, Third Party Defendant.

Civ. No. 1037.

United States District Court
D. South Dakota, S. D.

Jan. 23, 1957.

---

Ellsworth E. Evans and Lyle J. Wirt, Davenport, Evans, Hurwitz & Smith, Sioux Falls, S. D., for plaintiff.

Clinton G. Richards, U. S. Atty., and Lyle E. Cheever, As*t. U. S. Atty., Sioux Falls, S. D., for defendant and third party plaintiff.

H. T. Fuller (of Morgan & Fuller), Mitchell, S. D., for third party defendant.

MICKELSON, Chief Judge.

This action is brought under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b), 2671 et seq. The action arises out of an automobile collision involving a motor vehicle being driven by the plaintiff, Robert J. Irvin, and one being driven by one Robert B. Troup, who at the time of the collision was employed by the United States as a rural mail carrier and was acting within the scope of his employment. The plaintiff sustained serious personal injuries and damages to his automobile in the collision, which he claims were a direct result of the negligence of Troup, and brings this action against the United States of America for the sum of $125,000 as alleged damages.

The United States, under Rule 14(a), Federal Rules of Civil Procedure, 28 U.S.C.A., has impleaded The State Automobile Insurance Association, Des Moines, Iowa, as third party defendant, on the grounds that said third party defendant is or may be liable to the United States for all or a part of plaintiff's claim. The basis for impleading the third party defendant is a policy or contract of insurance containing coverage for public liability and property damage issued by the third party defendant to the deceased mail carrier, Troup.

The accident occurred on September 26, 1955, at approximately 12:30 P. M., at a point about 11 miles south of Brookings, South Dakota, on U. S. Highway 77, said highway being a blacktop or bituminous surfaced highway of a width of 24 feet, with graveled shoulders on each side. There was considerable mist in the atmosphere, and the highway was wet, but the visibility was good, and except for the moisture the road conditions were normal. The plaintiff was driving alone in his 1954 Roadmaster Buick, proceeding in a southerly direction on said highway. As he approached an intersecting east-west graveled road, he first noticed the Troup automobile approaching from the south when about 300 feet north of the intersection. He estimated the Troup automobile at this point to be about 150 feet south of the intersection. There was then nothing unusual about the position or operation of the Troup car upon the highway. When plaintiff was approximately 100 feet north of the intersection, Troup, who was then about 100 feet south of the intersection, began to angle his automobile across the center line of highway 77 to turn west on the intersecting gravel road. The approaches to the east-west road fan out, so that vehicles coming from the west on the gravel road and turning south on highway 77 enter said highway at a point approximately 50 feet south of the center of the intersection.[1] The plaintiff honked his horn, applied his brakes, and observing that Troup was continuing his course across highway 77 and farther into plaintiff's lane of travel, turned his car slightly to the west, and the left front of plaintiff's Buick collided with the right front of Troup's Pontiac. The point of impact as fixed by the investigating officers was near the west edge of the west lane of highway 77, about 47 feet south of the center of the intersection. The Troup car came to rest in the west ditch along said highway, facing northwesterly and 133 feet south of the center of the intersection. The plaintiff's car came to rest facing south, with the right wheels on the west shoulder of said highway, about

---

1. "Center of the intersection" is defined in SDC 44.0316 as the meeting point of the medial lines of the highways interesting one another.

103 feet south of the center of the intersection. The proof disclosed that the plaintiff's car traveled 147.4 feet from the point where its skid marks first appeared until it came to rest. The plaintiff testified that his speed was approximately 60·miles per hour at the time when he applied his brakes, and he estimated the speed of the Troup car at that time to be between 10 and 20 miles per hour.

As a result of the collision, Troup was killed and plaintiff seriously injured.

■ Under the Tort Claims Act, liability is determined by the law of the place where the act or omission occurs. United States v. United Services Automobile Association, 8 Cir., 238 F.2d 364. SDC Supp. 47.0304-1,[2] commonly known as the comparative negligence law, applies to our fact situation. Plaintiff contends that Troup's conduct constituted negligence, and that such negligence was the sole proximate cause of the accident and injuries sustained by the plaintiff, which the United States and third party defendant both deny. The United States and third party defendant further contend that if there was any negligence on the part of Troup, the plaintiff is barred from recovery because of his own contributory negligence, which was more than slight in comparison with the negligence, if any, of Troup.

■■ A careful consideration of the evidence dealing with the negligence of the deceased Troup convinces me that his conduct falls below the standard of care of the ordinarily prudent person under the circumstances. Immediately prior to the accident, Troup had delivered mail in a mailbox located on the east side of highway 77 and at a point 194 feet south of the center of this intersection. He had been delivering mail for a number of years over this same route and was familiar with U. S. Highway 77 and with the heavy traffic thereon, and was thoroughly familiar with this intersection where the accident occurred. A short distance north of the intersection highway 77 rises slightly, and by reason thereof the State Highway Department has placed a yellow "No Passing" line in the east or northbound traffic lane through this particular intersection. In angling to the left across this yellow "No Passing" line before passing beyond the center of the intersection, Troup's conduct fell short of the statutory requirements of SDC 44.0316.[3] Further, he was not driving on his right half of the highway as required by SDC 44.-0309.[4] There is no evidence in the record as to whether or not Troup gave any signal of his intention to make a left turn. However, the giving of any such signal at any time after plaintiff first noticed his presence upon the highway would not have given Troup the right to violate SDC 44.0309. See Iverson v. Knorr, 68 S.D. 23, 298 N.W. 28. I can reach no other conclusion than that the decedent Troup was guilty of negligence, and that his negligence was the proximate cause of the collision and the resulting damages sustained by plaintiff.

2. "In all actions brought to recover damages for injuries to a person or to his property caused by the negligence of another, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff was slight and the negligence of the defendant was gross in comparison but the contributory negligence of the plaintiff shall be considered by the jury in the mitigation of damages in proportion to the amount of contributory negligence attributable to the plaintiff; and all questions of negligence and contributory negligence shall be for the jury."

3. "Except as otherwise provided in this section, the driver of a vehicle intending to turn to the * * * left shall approach such intersection in the lane for traffic to the right of and nearest to the center line of the highway and in turning shall pass beyond the center of the intersection, passing as closely as practicable to the right thereof before turning such vehicle to the left. * * *"

4. "Upon all highways of sufficient width, except upon one way streets, the driver of a vehicle shall drive the same upon the right half of the highway * * *."

■ The United States contends that it is entitled to a presumption that Troup was exercising ordinary care at the time of the accident, and cite the case of Vaughn v. Payne, 75 S.D. 292, 63 N.W.2d 798, in support of such contention. This case is simply authority for the proposition that in determining the fault of the driver of an automobile who is killed in an accident, that it is the established law in this state that in the absence of any evidence as to the conduct of such person there is the presumption that he, acting on the instinct of self-preservation, was in the exercise of ordinary care. See other cases cited therein. The rule does not apply to the facts in this case. We have direct evidence appearing in this record as to Troup's conduct at the time of and immediately prior to the accident.

■ On the question of plaintiff's contributory negligence, there is some evidence that plaintiff may have been traveling at a rate of speed in excess of the posted limit of 60 miles per hour. We are, however, convinced that the speed of plaintiff's automobile, if it did in fact exceed the 60 miles per hour limit, was not the proximate cause of the accident, and that the negligence of the plaintiff, if any, was slight in comparison with the negligence of Troup. The plaintiff's own testimony was that he was traveling at approximately 60 miles per hour at the time he first saw the Troup vehicle upon the highway, and continued to maintain this same speed until he applied his brakes. His testimony as to his rate of speed shortly prior to the accident is corroborated by the witness Erickson, who testified that he noticed nothing unusual about the speed of plaintiff's automobile when it passed his farm about one mile north of where the accident took place. Two expert witnesses were called, one by the United States and third party defendant and one by the plaintiff, who gave expert testimony as to the speed of plaintiff's vehicle at the time its brakes were applied. The witness for the United States and third party defendant estimated such speed at 78.8 miles per hour. The plaintiff's expert witness expressed the opinion that plaintiff was traveling at approximately 60 miles per hour. The Court has carefully considered this expert testimony, but in view of the direct testimony bearing upon the subject, cannot give to it the weight contended for by any of the parties. As has heretofore been said, the speed of plaintiff's automobile may have to a slight degree exceeded the 60 miles per hour limit, but such speed was not the proximate cause of the accident.

As a result of the accident, plaintiff received painful, serious and permanent injuries which may be summarized as follows: four fractured ribs on the right side, injuries to tendons in the right arm, numerous skin abrasions, and a fractured nose. The most serious injury was a fractured left acetabulum, or what is commonly known as the hip socket. Uncontradicted evidence established that plaintiff has a permanent disability of 35 per cent of amputation of the left leg. X-rays taken on March 21, 1956, and November 6, 1956, show a continuing degeneration of the hip joint, which, according to the testimony of Dr. Robert E. Van Demark, will require surgery within from five to seven years. Alternate types of operations were suggested, each of which would require hospitalization and extensive periods of time without weight on the hip. Without surgery, the use of the hip might degenerate to a disability of 100 per cent, and with surgery, the best result would be 50 per cent of total hip disability. The plaintiff used crutches from the time of the accident until sometime in March, 1956, and has used a cane since that time. He was in the hospital at Brookings, South Dakota, for 1½ weeks immediately following the accident, and was then transferred to the Sioux Valley Hospital in Sioux Falls, where he was confined until December 4, 1955, or a period of eight weeks. Up to the time of trial, the plaintiff had incurred total expenses of $2,255.45 for medical and hospital care.

Plaintiff contends that his income will be greatly reduced as a result of his inability to travel and otherwise perform the work which he was doing prior to the time of the accident. He is employed by the Fritz A. Forseth General Insurance Agency of Aberdeen, South Dakota, as a field supervisor. It is his duty to solicit, train and assist local agents in producing general insurance business in parts of South and North Dakota, and this work requires considerable traveling by automobile. For the five years prior to the accident, plaintiff had an annual income as follows:

> For the year 1950, $19,238.98
> For the year 1951, $18,981.72
> For the year 1952, $21,459.28
> For the year 1953, $20,571.88
> For the year 1954, $26,638.09

In 1955, the year in which the accident occurred, plaintiff had an income of $13,784.67. He was unable to work the first two months of 1956, and testified that his income for the first 11 months of the past year was $21,252.72. While plaintiff testified that he can do only about one-half of the work he did before the accident, and it is undoubtedly true that he will be able to make fewer calls, yet there is little, if any, evidence that this will result in any substantial loss of income.

The evidence is undisputed that the fair market value of plaintiff's automobile before the accident was $2,950, and $200 after the accident, constituting damages in the sum of $2,750.

■ Thus, I find that the plaintiff is entitled to recover in this action his special damages amounting to the sum of $5,005.45, and the sum of $37,500 for his pain and suffering, permanent injuries, loss of earnings, and future medical and hospital care, amounting in the aggregate to the sum of $42,505.45.

Having thus determined the right of plaintiff to recover in this action and the amount of such recovery, we pass now to the question of the liability, if any, of the third party defendant to the United States. Briefly, it is the contention of the third party defendant that since this action was brought under the Federal Tort Claims Act and that the employer, the United States, has no right of indemnity against an employee, and since the insurance policy issued by it is a legal liability policy, that no claim can be asserted against the third party defendant prior to the establishment of the legal liability of the named insured, Robert B. Troup.

Under Item 1 in the Declarations of the policy, the name and address of the insured are given as "Robert B. Troup, Colman, South Dakota," and his occupation is listed as that of "Rural Mail Carrier," and his employer as "U. S. Government." The purposes for which the automobile is to be used are "Business and Pleasure." The policy insures, among other things, for bodily injury and property damage liability. The limits of liability are $100,000 for each person, and $300,000 for each accident under bodily injury liability, and $5,000 for each accident as to property damage liability. Under Insuring Agreements, Coverage "A"—Bodily Injury Liability, the insurer agrees:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile."

Under Coverage "B"—Property Damage Liability, it agrees:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance or use of the automobile."

In Insuring Agreement II, the insurer agrees to defend any suit against the

insured according to the terms of the policy even if the suit is groundless or fraudulent. Under Insuring Agreement III, Definition of Insured, the policy reads as follows:

"With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. * * *"

Under Item 6 of Conditions, the policy states as to coverages for bodily injury and property damage liability as follows:

"No action shall lie against the Association unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the Association. * * *"

The United States contends that it comes within the definition of the unqualified word "Insured," as a "person or organization legally responsible for the use" of the insured automobile. The insurer maintains that the United States does not qualify as an "insured" and also relies upon the "No action" clause in Condition 6 of the policy. There is no dispute that the insurance policy was in force at the time of the accident.

The United States relies upon the recent case of Rowley v. United States, D.C. April, 1956, 140 F.Supp. 295. There the Court was asked to approve a settlement in an action substantially identical to the case at bar. The plaintiff brought his action against the United States for injuries alleged to have been received in a collision between plaintiff's motorcycle and a car being driven by one Colzani, a mail carrier. who was delivering mail at the time of the collision. The United States impleaded the insurance company, which had issued a policy of insurance to Colzani, the relevant provisions of which are identical to the policy in the instant case. The Court, in refusing to allow a pro rata settlement which had been reached on the day a motion to dismiss the complaint against the third party defendant was to be heard, stated at page 296:

"Considerations which have given the Court pause are that if the Government is entitled to a judgment over against the insurance company for its liability, if any, to plaintiff, no reason appears why the insurance company should be relieved of its responsibility, even in part, at the expense of the Government; and if the insurance company is not responsible to the Government under the policy, no reason appears why the Government should accept even partial indemnity on such liability as the Government may have."

At page 297 the Court states further:

"I have been unable to find any cases in point on the position of the Government as an 'insured' under such policy provisions as are here involved, where the primary liability is asserted under the Tort Claims Act. In principle, there seems no reason why it should not have the benefit of such a policy to the same extent as any other entity coming within the definition of an 'insured', notwithstanding that it can have no relief directly against the person in whose name the policy was issued. See Gilman v. United States, 9 Cir., 1953, 206 F.2d 846, affirmed 347 U.S. 507, 74 S.Ct. 695, 98 L.Ed. 898; Sullivan v. United States, D.C.N.D. Ill., 1954, 120 F.Supp. 217.

"Absent some showing that the policy is unenforceable, these provisions, read in connection with the entire policy, in my opinion clearly establish the responsibility of the insurer to ultimately pay such judgment as may be recovered by plain-

tiff against the Government herein; and they probably demonstrate, in view of the weight of authority and reason, that the liability of the company may be determined in this action. * * * "

■ It is my opinion that the above statements correctly interpret the applicable law, and because the facts are so similar in the two cases, the Rowley case is strong authority for holding in the case at bar that the United States is an "Insured" under the terms of the policy issued by the third party defendant in this case.

It also appears to me that the question raised as to the "No action" clause was adequately answered in Jordan v. Stephens, D.C., 7 F.R.D. 140, at page 142:

"The 'no-action' clause is directly opposed to Rule 14. * * * The no-action provision of the policy is neither helpful to the third-party defendant, to the courts, nor generally is it in the interest of the public welfare. Its object is to put weights on the already too slow feet of justice."

The usual question of jury prejudice does not apply in this case. See Jenkins v. Black & White Cab Co., D.C., 15 F.R.D. 5.

■ The third party defendant cites two cases as authority for its contention that the United States is not a "person or organization" as these terms are used in the policy definition of the term "Insured." These two cases are Narloch v. Church, 234 Wis. 155, 290 N.W. 595; Farm Bureau Mutual Auto. Ins. Co. v. Manson, 94 N.H. 389, 54 A.2d 580, 583. Each of these cases was decided at least partially on the theory that since the sovereign is immune from its tort liability under the doctrine of respondeat superior, the sovereign could not qualify as an "Insured" under policy provisions similar to those in the instant case. Both of these cases arose prior to the passage of the Tort Claims Act, and no consideration of such Act was given by either of the Courts in arriving at its decision.

Section 2674, Title 28 U.S.C.A., makes the United States liable respecting the provisions of that title relating to tort claims in the same manner and to the same extent as a "private individual" under like circumstances. A private individual would certainly be included within the terms "person or organization." The insurer and third party defendant in this case at the time it issued the policy here involved was cognizant of the wording and effect of the Tort Claims Act, which made the United States liable relating to tort claims to the same extent as a private individual under like circumstances. The words "person or organization" used by the insurer in stating its definition of an insured were its own choice of words. The policy listed the occupation of the insured, Robert B. Troup, to be a rural mail carrier, his employer as the U. S. Government, and the purposes for which the described automobile was to be used as business and pleasure. I can reach no other conclusion but that the third party defendant intended to include the United States Government as an insured under the terms of the policy which it issued to Troup. Had it intended otherwise, it could have clearly indicated such intention by an endorsement to the policy. These facts, together with the well established rule of law that a policy of insurance reasonably susceptible of different interpretations will be construed strictly against the company, strengthens my conclusion that the third party defendant is liable in this case. See Ehrke v. North American Life & Casualty Co., 71 S.D. 376, 24 N.W.2d 640.

■ Since this case is largely one of first impression, I cannot resist the urge to advance some additional reasoning as to why I have reached the conclusions heretofore stated. In the passage of the Tort Claims Act, Congress made the United States responsible in money damages for injury or loss of property and personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or

employment. This was a generous and more or less gratuitous act on the part of the United States Government toward its employees and those who might be damaged by their negligent or wrongful acts or omissions. In my opinion, however, such action by Congress should not be construed by the Courts as an intention to relieve a government employee of all legal or moral responsibility for his negligence. In this case it appears that Troup, a rural mail carrier of the United States Government, felt his rightful responsibility as such employee, and instead of allowing the United States Government to be held liable to respond in damages for his negligence arising out of his employment, purchased this policy of insurance. This demonstrated a laudable sense of moral and legal responsibility on his part, and the Courts should be hesitant to discourage such commendable action on the part of government employees. Insurance companies are engaged in this business, and for a stated premium are eager to insure the legal liability of persons owning, operating and maintaining motor vehicles. For a premium paid by the government employee Troup, the third party defendant insured the liability of Troup and of the United States arising out of the ownership, maintenance and use of Troup's automobile. There can be no doubt but that plaintiff could have brought this action against the personal representative of the estate of Robert B. Troup, deceased, and the insurer, third party defendant herein, would have been obligated to defend such suit on behalf of the decedent's estate and pay all damages which plaintiff might have recovered in such action. Plaintiff, however, elected to bring suit under the Tort Claims Act against the United States, but in my opinion this should in no manner permit the third party defendant to escape a liability which it contracted to assume and which it was paid to assume.

I therefore find and conclude that plaintiff is entitled to recover damages in this action against the United States of America, defendant and third party plaintiff, in the aggregate amount of $42,505.45, and further find and conclude that the United States is an insured under the policy of insurance issued by the third party defendant. Judgment will be in favor of the plaintiff and against the United States of America, defendant and third party plaintiff, in the amount of $42,505.45, and judgment in favor of the United States of America, defendant and third party plaintiff, and against the State Automobile Insurance Association, Des Moines, Iowa, third party defendant, in a like amount.