766 F.2d 97
 54 USLW 2045
 OVERSEAS NATIONAL AIRWAYS, INC. Plaintiff,
v.
UNITED STATES of America, Defendant-Third-Party Plaintiff-Appellant,
v.
PORT AUTHORITY OF NEW YORK AND NEW JERSEY, Third-Party
Defendant-Appellant,
and
The City of New York, Third-Party Defendant-Appellee.
 Nos. 616, 617, Dockets 84-6232, 84-6254.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 18, 1985.
Decided June 27, 1985.
 
 Harold J. Krent, Washington, D.C. (Richard K. Willard, Acting Asst. Atty. Gen., Robert S. Greenspan, Civ. Div., Dept. of Justice, Washington, D.C., Raymond J. Dearie, U.S. Atty., E.D.N.Y., Brooklyn, N.Y.) for defendant-third-party plaintiff-appellant U.S.
 Peter J. Kurshan (Herbert Rubin, Herzfeld & Rubin, New York City, of counsel), for third-party defendant-appellant, The Port Authority of New York and New Jersey.
 Miriam Skolnik (Frederick A.O. Schwartz, Jr., Corp. Counsel, Francis F. Caputo, Mary M. McCoy, Assts. Corp. Counsel, New York City, of counsel), for third-party defendant-appellee, The City of New York.
 Before OAKES, CARDAMONE and PIERCE, Circuit Judges.
 PIERCE, Circuit Judge:
 
 
 1
 The United States of America and the Port Authority of New York and New Jersey appeal from an order of the United States District Court for the Eastern District of New York (Nickerson, Judge ) which granted the motion of the City of New York for summary judgment and dismissed their claims against the City of New York seeking contribution for and indemnification of damages arising out of an airplane crash.
 
 BACKGROUND
 
 2
 These actions arise from the crash landing and explosion of an airplane at the John F. Kennedy International Airport ("airport" or "JFK") in New York City, on November 12, 1975. The crash occurred after an Overseas National Airways, Inc. ("Overseas") jet struck a flock of seagulls during takeoff, and its engines ingested a number of the birds. One of the engines lost power and became engulfed in flames. The pilot successfully brought the jet to a stop on the runway, and the passengers and crew deplaned safely, but the plane and its contents were destroyed by the ensuing fire. All parties agreed that the ingestion of the birds caused the accident.
 
 
 3
 On May 14, 1979, Overseas and Bank of America--the owner of the destroyed jet--filed suit in the United States District Court for the Eastern District of New York. The suit, brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. Secs. 1346(b) and 2674 (1984), claimed that the employees of the Federal Aviation Administration ("FAA") were negligent in certifying the airport and the plane's engines and in clearing the plane for takeoff. The United States then initiated third-party actions against the Port Authority of New York and New Jersey ("Port Authority") and The City of New York ("City"). Third-party defendant Port Authority is the operator of JFK. Since 1968, it has utilized a "bird control" program to reduce the risk of accidents such as occurred herein. In its third-party action against the Port Authority, the United States claimed that the Port Authority negligently operated the airport with respect to bird control and sought contribution and indemnification in the event the United States was held liable for the loss of the airplane. Third-party defendant City operates and maintains two landfills located near the airport. These landfills attract large numbers of birds, particularly seagulls. The United States' complaint alleged that the City's negligent operation of the landfills attracted the birds which caused the accident herein and sought contribution and indemnification from the City in the event that the United States was held liable to Overseas. In response to the United States' suit, the Port Authority filed a third-party complaint against the City seeking contribution and indemnification.
 
 
 4
 At the same time, Overseas filed suit in the New York State courts against the Port Authority and the City. Its complaint alleged that the Port Authority and the City had been negligent in essentially the ways charged in the United States' third-party complaint, and sought damages for Overseas' property loss. Both defendants cross-claimed for indemnification and contribution against each other. On August 15, 1983, the state court approved a settlement agreement among the United States, the Port Authority, and Overseas. The United States participated in the settlement although it was not a party to the state court action. The City, although a defendant therein, did not. The final order entered by the state court dismissed all claims and cross-claims with prejudice but provided "any claims the defendant third-party plaintiff Port Authority may have against the third-party defendant City of New York in the Federal Court action shall be preserved."
 
 
 5
 Thereafter, in the Overseas federal court action, the district court approved a stipulation among all parties except the City by which all claims were withdrawn except those of the Port Authority and the United States against the City. The City then moved to dismiss the Port Authority's claims against it for lack of subject matter jurisdiction, and those of both the United States and the Port Authority for failure to state a claim upon which relief could be granted. In addressing these motions, the court decided to consider materials outside the pleadings and thus treat the motions as seeking summary judgment. The district court first decided that it would be proper to exercise ancillary jurisdiction over the Port Authority's claims against the City and that, because the order of the state court had expressly preserved those claims, res judicata did not bar the Port Authority's action. Turning to the merits of the United States' and the Port Authority's claims against the City, the district court, after determining that New York law governed, held that: 1) because N.Y.Gen.Oblig.Law Sec. 15-108(c) bars a "tortfeasor who has obtained his own release from liability" from seeking "contribution from any other person," neither the United States nor the Port Authority could state a claim for contribution from the City; and 2) because New York law provides for indemnification only by contract or when one is held liable solely through operation of law and not on account of any negligence of his own, neither the Port Authority nor the United States could state a claim against the City for indemnification. The district court therefore granted the City's motion for summary judgment.
 
 
 6
 The United States and the Port Authority appealed. We affirm.
 
 DISCUSSION
 
 7
 On appeal, the United States urges that we create and apply a federal common law rule of decision that would govern whenever the United States seeks contribution from a joint tortfeasor in an aircraft accident case. The United States essentially argues that "[t]he basis for imposing a federal law of contribution and indemnification is ... the predominant, indeed almost exclusive, interest of the federal government in regulating the affairs of the nation's airways" and that "the imposition of a federal rule of contribution and indemnification serves a second purpose of eliminating inconsistency of result in similar collision occurrences as well as within the same occurrence due to the application of differing state laws on contribution and indemnity." See Kohr v. Allegheny Airlines, Inc., 504 F.2d 400, 403 (7th Cir.1974), cert. denied, 421 U.S. 978, 95 S.Ct. 1980, 44 L.Ed.2d 470 (1975). In support of this argument, the United States points to the extensive federal regulation of aviation under the Federal Aviation Act of 1958, 49 U.S.C. Sec. 1301 et seq.: for example, under the Act, Congress has authorized the Federal Aviation Administration to insure the safety of airplane travel, to certify aircraft, their engines, and airports, and to promulgate regulations governing the operation of certified airports. The United States also argues that because the "[t]he application of state law ... would subject the rights and duties of the United States to exceptional uncertainty," Clearfield Trust Co. v. United States, 318 U.S. 363, 367, 63 S.Ct. 573, 575, 87 L.Ed.2d 838 (1943), the case for choosing a federal rule of decision is even more compelling here than in other aviation tort litigation.
 
 
 8
 We agree with the United States that these are persuasive arguments for creating a federal rule of decision to be applied when the United States seeks contribution from another party in an aviation tort case. Were we free to act upon the policy considerations detailed by the government in its arguments, we might indeed be inclined to create such a federal rule of contribution. However, in our opinion, we do not act with such freedom in this area of the law. A fair reading of the FTCA and applicable Supreme Court precedent leads us to the conclusion that state law governs claims by the United States for contribution from other defendants in aviation tort cases.
 
 
 9
 The controlling case here is Executive Jet Aviation v. City of Cleveland, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). In Executive Jet, a jet aircraft struck a flock of seagulls as it took off from Cleveland's Burke Lakefront Airport adjacent to Lake Erie. As a result, the plane lost power, crashed, and ultimately sank in the navigable waters of Lake Erie, a short distance from the airport. The owners of the plane brought suit against the City of Cleveland, the airport manager, and the air traffic controller who had cleared the plane for takeoff. The suit invoked the admiralty jurisdiction of the district court. The Supreme Court affirmed the district court's dismissal of the complaint for lack of subject matter jurisdiction. Presented with the same policy arguments for a uniform federal law of aviation torts that the government makes here, the Supreme Court declined the invitation to apply federal admiralty law to such cases. The Court's language and reasoning in so doing, we believe, compels a conclusion that Executive Jet holds not simply that admiralty jurisdiction does not govern aviation torts taking place within the continental United States. In disposing of the case, the Supreme Court warned that federal courts must be extremely cautious in creating federal law that preempts traditional state law causes of action:
 
 
 10
 The power reserved to the states, under the Constitution, to provide for the determination of controversies in their courts may be restricted only by the action of Congress in conformity to the judiciary sections of the Constitution.... Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which [a federal] statute has defined.
 
 
 11
 Executive Jet, 409 U.S. at 272-73, 93 S.Ct. at 506-07 (quoting Healy v. Ratta, 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248 (1934)). The Court went on to state that creation of a federal law of aviation torts should be left to Congress: although it might be "that aviation tort cases should be governed by uniform substantive ... laws .... [i]f federal uniformity is the desired goal with respect to claims arising from aviation accidents, Congress is free under the Commerce Clause to enact legislation applicable to all such accidents." Id. at 273-74, 54 S.Ct. at 507. Reviewing these statements and the reasoning of the Supreme Court in Executive Jet, see id. at 272-74, 54 S.Ct. at 506-07, we conclude state, and not federal law, governs aviation tort litigation. In response to this interpretation of Executive Jet, the United States argues that the case decided only that admiralty law does not govern aviation torts occurring within the continental United States. However, in view of the Court's language and reasoning, we conclude that a fair reading of the case will not permit such a narrow interpretation.
 
 
 12
 The United States further argues that even though state law governs aviation tort litigation generally, and such litigation against the United States in particular (see Federal Tort Claims Act, 28 U.S.C. Sec. 2674 (providing that the "United States shall be liable [for its employees' torts] in the same manner and to the same extent as a private individual under like circumstances")) it is nevertheless proper to create and apply a federal rule of decision to govern claims by the United States for contribution from other parties. However, we perceive no authority to fashion and apply a different law to such claims. The federal interest in aviation is no greater when the United States seeks contribution from another party than in any other aspect of aviation tort litigation. Moreover, it adds nothing in cases such as this to assert that "application of state laws ... would subject the rights and duties of the United States to exceptional uncertainty." Clearfield Trust Company v. United States, 318 U.S. 363, 367, 63 S.Ct. 573, 575, 87 L.Ed. 838 (1943). Whenever suit is brought against the government in an aviation tort case, the rights and duties of the United States are subject to the vagaries of state law. However, Congress decided when it enacted the Federal Tort Claims Act that this was proper, and it is not our function to question the wisdom of that decision.
 
 
 13
 Moreover, the case law bearing on this question does not support application of other than state law to the United States' claim for contribution. In United States v. Yellow Cab Co., 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523 (1951), the Supreme Court decided that the FTCA--because it makes the government liable for its employees' torts "in the same manner and to the same extent as private individuals"--authorizes suits against the United States for contribution. In rejecting the United States' argument that it did not, the Court reasoned:
 
 
 14
 However, if the Act is interpreted as now urged by the Government, it would mean that if an injured party recovered judgment against the Government, the Government could then sue its joint tort-feasor for the latter's contributory share of the damages (local substantive law permitting ). On the other hand, if the injured party recovered judgment against the private tort-feasor, it would mean that (despite local substantive law favoring contributory liability) that individual could not sue the Government for the latter's share of the same damages.
 
 
 15
 Id. at 552, 71 S.Ct. at 405 (emphasis added). Thus, the Supreme Court has indicated, in dictum, that state law generally governs claims of the United States for contribution.
 
 
 16
 We are aware of only two cases in which the Supreme Court has applied law other than state law in assessing the United States' claims for indemnification--though not contribution--when its liability derived from the FTCA. However, these two cases are sui generis and cannot be considered controlling here. In United States v. Seckinger, 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970), an employee of a government contractor sued the United States for its negligence in failing to de-energize a power line within the contractor's work area. The United States then sued the contractor for indemnification basing its claim on a clause within its contract with the defendant. The Supreme Court stated the issue as follows: "This case concerns the construction of a provision common to fixed-price government construction contracts...." Id. at 204, 90 S.Ct. at 881. Since Clearfield Trust Co. v. United States, 318 U.S. at 364, 63 S.Ct. at 574 (1943), it has been clear that federal laws govern the interpretation of government contracts. But this particular rule has no bearing where, as here, the United States' claims are not based on any contract.
 
 
 17
 United States v. Gilman, 347 U.S. 507, 74 S.Ct. 695, 98 L.Ed. 898 (1954), also cited by the government herein as justification for applying federal law to its claim for contribution, is similarly inapposite. In Gilman, a private plaintiff commenced suit against the United States under the FTCA seeking to recover for injuries sustained when his car was struck by a government vehicle. The United States then filed a third-party suit for indemnification against the individual government employee whose negligence caused the accident. The Supreme Court held that the government could not maintain the action against its employee even though state law would have allowed such a suit. However, in so doing, the Court relied not on policy considerations involving the United States' strong interest in the area, but rather upon the Congress' refusal to address the question when it enacted the FTCA and upon substantial legislative history suggesting that Congress did not intend to allow the government to sue its employees for indemnification. See id. at 509-13, 74 S.Ct. at 696-98. Accordingly, Gilman does not support the position asserted by the government herein.
 
 
 18
 Having determined that state law governs this case, we now turn to appellants' other arguments. Both the Port Authority and the United States appear to concede that under New York law neither can state a claim against the City for contribution. In any event, we agree with the district court that N.Y.Gen.Oblig.Law Sec. 15-108(c), which bars a settling tortfeasor from seeking contribution, requires dismissal of these claims.
 
 
 19
 The Port Authority and the United States do argue that even under New York law, they have stated claims against the City for indemnification. We disagree. Under New York law, indemnification, which "shifts the entire loss from one tortfeasor who has been compelled to pay it to the shoulders of another who should bear it instead," Rogers v. Dorchester Associates, 32 N.Y.2d 553, 565 n. 2, 347 N.Y.S.2d 22, 300 N.E.2d 403 (1973) (quoting W. Prosser, Prosser on Torts Sec. 51 (1971)), is available only to a defendant who has been held liable solely through operation of law--viz., vicarious liability--or to one who has a contractual right thereto. See Poling Transportation Co. v. United States, No. 83 CV 1392 (E.D.N.Y. Apr. 3, 1984), aff'd, No. 84-6252 (2d Cir. Dec. 31, 1984); Flood v. Re Lou Location Engineering, 487 F.Supp. 364, 367 (E.D.N.Y.), aff'd, 636 F.2d 1202 (2d Cir.1980). Therefore, the United States and the Port Authority may claim indemnification only if their liability has sprung vicariously from the City's active negligence--since neither has any contractual right thereto.
 
 
 20
 Neither appellant has offered a theory of the accident wherein it was liable to the plaintiff only because of the City's negligence. Assuming that the City negligently operated the landfills and that absent this negligence, the accident would not have occurred, neither the United States nor the Port Authority could have been liable to Overseas unless it had breached a duty independent of that of the City to operate the landfills non-negligently. The United States, through its employees in the Federal Aviation Administration, certified the airport and the plane's engines, cleared the runway for takeoff, and permitted the continued operation of the airport as a certificated airport--allegedly with knowledge that the bird hazard was ineffectively managed. Had the employees of the FAA not performed at least one of these duties negligently, the United States could not have been held liable to Overseas under the FTCA. See 28 U.S.C. Sec. 1346(b) (providing for liability of the United States for the negligent or wrongful acts of its employees). Similarly, the Port Authority could not have been liable to Overseas but for its own independent negligence. As the Port Authority conceded in its pleadings, it "operated, maintained and controlled ... [the airport]" and "utilized a bird control program approved by the Federal Aviation Administration." The Port Authority was responsible for the non-negligent operation of the Airport not by operation of law but as a result of its contractual duties to operate and maintain the Airport on a day-to-day basis. The Port Authority's duty to operate the airport non-negligently included the responsibility for dealing with a known bird hazard. This duty was independent of, and unrelated to the City's duty to operate non-negligently its landfills. Hence, the Port Authority could not be liable to Overseas unless it independently contributed to the happening of the accident by breaching its duty to operate the airport non-negligently. The Port Authority, being liable for its own independent, negligent acts and omissions, may not seek indemnification from the City.
 
 
 21
 In the district court, the United States also argued an alternative theory in support of its claim for indemnification. On March 1, 1974, the City and the National Park Service signed a memorandum of understanding in which the City agreed to operate the landfills in accordance with federal guidelines governing the operation of solid waste management facilities. The United States contended in the district court that this agreement gave rise to a right of indemnification against the City for injuries arising from negligent operation of the landfills. On appeal, the United States seems to have abandoned this argument. In any case, we agree with the district court that nothing in the agreement can be construed as an indemnification clause.
 
 
 22
 We affirm.
 
 OAKES, Circuit Judge (dissenting):
 
 23
 I would reverse as to the United States' claim for contribution but otherwise affirm. Accordingly I must respectfully dissent.
 
 
 24
 I believe that a federal rule of decision should apply in a two-stage analysis. The underlying action in this case is predicated on federal law, namely the FTCA, and federal common law should govern the United States' claim for contribution because the relationships among the relevant parties are based, in part, on the United States' obligations under the Federal Aviation Act. As Justice Jackson put it in Northwest Airlines, Inc. v. Minnesota, 322 U.S. 292, 303, 64 S.Ct. 950, 956, 88 L.Ed. 1283 (1944) (Jackson, J., concurring), "Planes ... move only by federal permission, subject to federal inspection, in the hands of federally certified personnel and under an intricate system of federal commands." In contexts such as this one, where "Government activities 'aris[e] from and bea[r] heavily upon a federal ... program,' ... federal interests are sufficiently implicated to warrant the protection of federal law." United States v. Kimbell Foods, Inc., 440 U.S. 715, 727, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979) (quoting United States v. Little Lake Misere Land Co., 412 U.S. 580, 592, 93 S.Ct. 2389, 2396, 37 L.Ed.2d 187 (1973)).
 
 
 25
 The more difficult question involves choice of law: should the court fashion a uniform federal rule of decision or find that state law provides the proper rule? The majority holds that state law must be applied. I disagree. On the one hand, this case is not governed by the Supreme Court's discussions about admiralty jurisdiction in Executive Jet Aviation v. City of Cleveland, 409 U.S. 249, 272-73, 93 S.Ct. 493, 506, 34 L.Ed.2d 454 (1972). In Executive Jet, the Court held that federal admiralty jurisdiction did not apply to aviation tort claims where there was no significant relationship between the conduct at issue and traditional maritime activity. Admittedly, the Court expressed concerns about expanding the scope of federal admiralty jurisdiction, but this case has nothing to do with admiralty jurisdiction. In fact, there is no subject matter jurisdiction problem in this case. Executive Jet does not bear on whether the United States' claim for contribution should be governed by a federal rule of decision. I see no reason to believe that the Executive Jet Court was limiting the choice of federal versus state rules of decision under federal common law.
 
 
 26
 On the other hand, the majority suggests that Congress has provided that state law applies. Of course, if that were true our inquiry would be at an end. I do not, however, read the FTCA as incorporating state law as the rule of decision on the issue of contribution presented here. The FTCA, 28 U.S.C. Secs. 1346(b), 2674, certainly does provide that the substantive tort law of the state involved governs claims against the United States. See, e.g., Executive Jet, 409 U.S. at 273-75, 93 S.Ct at 506-07. But this is not a suit against the United States; rather it is a third party claim by the United States arising out of an FTCA action, implicating quite different concerns. Cf. United States v. Seckinger, 397 U.S. 203, 209-11, 90 S.Ct. 880, 884-85, 25 L.Ed.2d 224 (1970) (applying federal law to defeat United States third party claim for indemnity against a Government contractor); United States v. Gilman, 347 U.S. 507, 74 S.Ct. 695, 98 L.Ed. 898 (1954) (applying federal law to bar an indemnity claim by United States against an employee). The majority finds these cases inapposite. Nevertheless, they support the conclusion that the FTCA does not incorporate state law for the purposes of third party claims brought by the United States.
 
 
 27
 The majority also finds support for its position in United States v. Yellow Cab Co., 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523 (1951). The Yellow Cab Court did hold that the FTCA applies to a third party claim for contribution against the United States. Id. at 556-57, 71 S.Ct. at 407. At the same time, the Court indicated that the FTCA has no bearing on a claim by the United States for contribution. Id. at 551, 71 S.Ct. at 405. The Court's parenthetical dictum about "local substantive law permitting," id. at 552, 71 S.Ct. at 405, cited by the majority, should not be read as a limitation on federal common law, an issue that did not arise in Yellow Cab.
 
 
 28
 Without the limitations perceived by the majority, I would fashion a federal rule. The Supreme Court and Second Circuit cases show that the choice of law decision turns on a balancing of federal interests against state interests. See, e.g., Kimbell Foods, 440 U.S. at 730, 99 S.Ct. at 1459; In re "Agent Orange" Product Liability Litigation, 635 F.2d 987, 990 (2d Cir.1980), cert. denied, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981). Of course, this choice of law question presents a problem only if state law conflicts with the appropriate federal rule, but here it does because, as the majority rightly holds, the New York law bars contribution where the parties seeking it have settled. And the United States persuasively--at least to me--argues that the FTCA (and general) policy that settlement is favored, see 28 U.S.C. Sec. 2677 (1982), supports contribution and that the FAA policy that one central agency promote air safety, see 49 U.S.C. Sec. 1421 (1982), supports the need for a uniform rule. See Kohr v. Allegheny Airlines, Inc., 504 F.2d 400, 405 (7th Cir.1974), cert. denied, 421 U.S. 978, 95 S.Ct. 1980, 44 L.Ed.2d 470 (1975); see also Texas Industries, Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 641, 101 S.Ct. 2061, 2067, 68 L.Ed.2d 500 (1981) ("In areas where federal common law applies, the creation of a right to contribution may fall within the power of the federal courts."); Cooper Stevedoring v. Fritz Kopke, Inc., 417 U.S. 106, 113, 94 S.Ct. 2174, 2178, 40 L.Ed.2d 694 (1974) (fashioning a rule of contribution under admiralty jurisdiction).
 
 
 29
 The analysis of the Court in Kimbell Foods and Little Lake Misere is enlightening. In Kimbell Foods, the Court ultimately chose a state law rule of decision for three reasons: the federal statutes and regulations involved expressly referred to state law, the application of state law would not burden federal interests, and the private parties involved relied on state law. This case is different. As noted above, while the United States' liability to injured persons is expressly predicated on state law, the FTCA says nothing about the United States' ability to seek contribution being governed by state law. See 28 U.S.C. Sec. 1346(b). In fact, the Supreme Court has held in other contexts that federal rules of decision govern third party liability where the United States is primarily liable under the FTCA's reference to state law. See, e.g., Seckinger, supra; Gilman, supra. More important, the application of state law--which I recognize seeks to preserve judicial resources and to codify the traditional rule that a voluntary payment cannot be recovered, see Mitchell v. New York Hospital, 61 N.Y.2d 208, 216, 473 N.Y.S.2d 148, 152, 461 N.E.2d 285, 289 (1984)--burdens the federal interests favoring settlement of FTCA claims and uniformity of FAA obligations. And there is no evidence that anyone relied on state law. Indeed, this case resembles Little Lake Misere, where the Court stated that federal common law could not borrow state rules aberrant or hostile to federal interests. 412 U.S. at 596, 93 S.Ct. at 2398; see also Note, The Federal Common Law, 82 Harv.L.Rev. 1512, 1517-19 (1969) (arguing for a general presumption in favor of state law that can be overridden by a showing of the need to foster federal policies or promote uniformity). The majority concedes that if Executive Jet were not controlling, it would agree with the Government's choice of law argument.
 
 
 30
 Moreover, contrary to Kohr, supra, I would hold that the Port Authority cannot benefit from this federal rule. While it may seem slightly incongruous to create a federal common law right for one party in a lawsuit but not for another, the case law clearly distinguishes between the rights and duties of the United States as a party and those of private parties. See, e.g., Northwest Airlines, Inc. v. Transport Workers Union, 451 U.S. 77, 95, 101 S.Ct. 1571, 1582, 67 L.Ed.2d 750 (1981); Miree v. Dekalb County, 433 U.S. 25, 32, 97 S.Ct. 2490, 2495, 53 L.Ed.2d 557 (1977).
 
 
 31
 Turning to appellants' state law arguments, I am in general agreement with the majority decision. The United States and the Port Authority can make no claim for indemnity against the City under state law, because the United States concedes that it was responsible for allowing the jet to take off, and the Port Authority concedes that it was responsible for keeping the runways clear of birds. Finally, I would also reject the Port Authority's argument that the City waived its protection against contribution under New York law. N.Y.Gen.Oblig.Law Sec. 15-108(c) (McKinney 1978).