FIRST KENTUCKY TRUST COMPANY,
Executor of the Estate of Louisa W.
Moore, Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 79–3452.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 5, 1981.

Decided June 21, 1984.

Edwin G. Middleton, Middleton & Reutlinger, Brooks Alexander (argued), Louisville, Ky., for plaintiff-appellant.

Albert Jones, U.S. Atty., Louisville, Ky., Beth Kaswan, U.S. Dept. of Justice, Tax Div., M. Carr Ferguson, Gilbert E. Andrews, Donald B. Susswein (argued), Washington, D.C., for defendant-appellee.

Before MERRITT, Circuit Judge, and PHILLIPS and BROWN, Senior Circuit Judges.

PHILLIPS, Senior Circuit Judge.

■ This action was filed by an executor to recover federal estate taxes assessed and collected by the Commissioner of Internal Revenue. Involved is the estate of a wife whose husband was found guilty of killing her. Two statutes are at issue: the federal estate tax law, particularly 26 U.S.C. §§ 2033 and 2042; and the Kentucky forfeiture statute, K.R.S. § 381.280:

> **381.280  Forfeiture of right to property for killing decedent**
>
> If the husband, wife, heir-at-law, beneficiary under a will, joint tenant with the right of survivorship or the beneficiary under any insurance policy takes the life of the decedent and is convicted therefor of a felony, the person so convicted forfeits all interest in and to the property of the decedent, including any interest he would receive as surviving joint tenant, and the property interest so forfeited descends to the decedent's other heirs-at-law, unless otherwise disposed of by the decedent.

This Kentucky statute is constitutional. *Wilson v. Bates*, 313 Ky. 333, 231 S.W.2d 39 (1950). *See also* Annotation, "Felonious killing of ancestor as affecting intestate succession," 39 A.L.R.2d 477 (1955).

I

The Plaintiff-Appellant is First Kentucky Trust Company of Louisville, executor of the estate of Mrs. Louisa W. Moore, wife of William B. Moore. Mrs. Moore died testate on December 4, 1970. On June 13, 1971, her husband was convicted of voluntary manslaughter of his wife, a felony, and sentenced to imprisonment for 21 years. The conviction was affirmed by the Court of Appeals of Kentucky (then the Commonwealth's court of last resort) in *Moore v. Commonwealth*, 489 S.W.2d 516 (Ky.1972), *cert. denied* 414 U.S. 865, 94 S.Ct. 127, 38 L.Ed.2d 117 (1973), *reh'g denied* 414 U.S. 1086, 94 S.Ct. 606, 38 L.Ed.2d 491 (1973). On December 27, 1974 the Governor of Kentucky commuted the sentence of Mr. Moore to time served.

William B. Moore had purchased four policies of life insurance upon the life of his wife, totaling $190,629.02, all payable to him as named beneficiary, or to his executors or administrators. Mr. and Mrs. Moore had purchased their home, valued at $115,000.00, with the title vested in them as tenants by the entirety: that is, the title was to be held jointly by them so long as they both were living, with the remainder vesting in fee simple in the survivor.

District Judge Thomas A. Ballantine, Jr. held that the insurance proceeds are includable in the estate of Mrs. Moore under Section 2042(1) of the Internal Revenue Code of 1954 because Kentucky law requires the proceeds to be paid to her heirs or distributees and not to her husband, the designated beneficiary.[1] Judge Ballantine also held that the entire value of the residence is includable in the gross estate of the decedent under 26 U.S.C. § 2033,[2] be-

---

1. 26 U.S.C. § 2042(1):

   **§ 2042.  Proceeds of life insurance**

   The value of the gross estate shall include the value of all property—

   **(1) Receivable by the executor.**—To the extent of the amount receivable by the executor as insurance under policies on the life of the decedent.

2. 26 U.S.C. § 2033 provides:

   **§ 2033.  Property in which the decedent had an interest**

cause Kentucky law bars Mr. Moore from recovering any interest in the residence at the death of his wife by homicide at his hand, but instead requires distribution of the residence to the devisees or heirs at law of Mrs. Moore.

## II

Two issues are presented on the appeal:

I. Were the proceeds of insurance policies on the life of Mrs. Moore, which were owned by Mr. Moore and payable to him as beneficiary, correctly included in Mrs. Moore's estate under Section 2042(1), Internal Revenue Code, on the basis of the Kentucky forfeiture statute?

II. Was the entire value of the residence owned by Mr. and Mrs. Moore as tenants by the entirety correctly included in Mrs. Moore's estate under Section 2033, Internal Revenue Code, on the basis of the Kentucky forfeiture statute?

The determination of the extent of decedent's interest in the insurance policies and the residence turns on State law. *Tyler v. United States*, 468 F.2d 959 (10th Cir.1972); *Keeter v. United States*, 461 F.2d 714 (5th Cir.1972); *Greer v. United States*, 448 F.2d 937 (5th Cir.1971); *Kent Bank and Trust Co. v. United States*, 362 F.2d 444 (6th Cir.1966); *Flitcroft v. C.I.R.*, 328 F.2d 449 (9th Cir.1964).

We answer both questions in the affirmative and affirm the district court.

## III

■ It is a well-settled rule of law in Kentucky and a large number of other jurisdictions that the beneficiary of a life insurance policy who intentionally and feloniously takes the life of the insured is precluded from recovering the proceeds. See Annotation, "Killing of insured by beneficiary as affecting life insurance or its proceeds," 27 A.L.R.3d 794 (1969), and cases cited at pages 802–805, including *National Life Insurance Co. v. Hood's Administrator*, 264 Ky. 516, 94 S.W.2d 1022

(1936). *See also* opinion of Chief Justice Palmore in *Commercial Travelers Mutual Accident Association v. Witte*, 406 S.W.2d 145, 27 A.L.R.3d 784 (1966), applying New York law.

The foregoing annotation also cites many decisions for the proposition that when the beneficiary is barred from recovering under an insurance policy because he feloniously killed the insured, the proceeds should be paid to the estate of the insured. 27 A.L.R.3d at pages 830–832. Among the cases cited is the Kentucky decision in *National Life Insurance Co. v. Hood's Admr., supra.*

District Judge Ballantine correctly wrote as follows in his memorandum opinion:

At her death Mrs. Moore was the named insured in four policies of life insurance, the total proceeds of which amounted to over $190,000.00 The beneficiary of the policies was Mr. Moore or his executors or administrators.

Mr. and Mrs. Moore also owned their residence which is stipulated to have a value of $115,000.00 Title to the property was held "during their joint lives with the remainder in fee simple to the survivor of them."

Plaintiff has paid an estate tax deficiency assessment of over $103,000.00 and, after its claim for refund of this payment was denied by the Internal Revenue Service, it instituted this action.

We look first to the question of the proceeds of the insurance policies. Plaintiff argues that the proceeds of the policies were not "receivable by the executor as insurance under policies on the life of the decedent." 26 U.S.C. Section 2042(1). The designated beneficiary under each policy is "insured's husband, William B. Moore, his executors or administrators." Mr. Moore has executed a will, by the terms of which he devises the proceeds of these insurance policies to the Trustee under a Trust set up in South Carolina. The beneficiaries of that Trust are Mrs.

---

The value of the gross estate shall include the value of all property to the extent of the

interest therein of the decedent at the time of his death.

Moore's children by a previous marriage and the surviving children of Mr. and Mrs. Moore. Plaintiff argues that this testamentary disposition of the proceeds of the policy effectively divests Mr. Moore of any interest in the proceeds. The simple answer to this argument is that Mr. Moore is completely free to revoke the testamentary disposition of the proceeds by revocation of his will or by a codicil thereto.

■ Plaintiff further argues that Section 2042(1) of the Internal Revenue Code of 1954 is inapplicable since the amounts are not receivable by Mrs. Moore's executor. We start with the basic premise that entitlement to insurance proceeds is governed by state law. *Kern v. U.S.,* 491 F.2d 436 (9th Cir.1974). With this assumption in mind, we look to Kentucky law for a determination of the disposition of the proceeds.

KRS 381.280 provides: (statute quoted)

.    .    .    .    .

There can be no reasonable construction of the plain language of the statute but that the beneficiaries of the policies are Mrs. Moore's other heirs at law. In effect, the proceeds of the policies are to be disposed of as intestate property under the provisions of Kentucky's Statute of Descent and Distribution, KRS 391.-010 and 391.030. Such distribution of the proceeds of the policies is, of course, subject to the forfeiture provision quoted above.

.    .    .    .    .

The Court finds that the motion of the defendant for summary judgment as to the taxable nature of the insurance proceeds should be granted.

The executor makes several arguments that the insurance proceeds are not taxable to the estate, all of which we find to be without merit. It is contended that the forfeiture statute is inapplicable because it deals only with "property of the decedent," and Mrs. Moore had no interest in the policies. The policies were purchased by Mr. Moore, and he had full control over the designation of beneficiaries. The Government responds that such an interpretation directly conflicts with and frustrates the policy considerations underlying the forfeiture statute. This construction would result in the murderer-beneficiary receiving the proceeds.

■ The executor also relies on Kentucky's stated policy of not punishing the innocent children beneficiaries of the wrongdoer because of the wrongful act of their parent. *Cowan v. Pleasant,* 263 S.W.2d 494, 495 (Ky.1954). The Executor reasons that Kentucky law requires that Mr. Moore, as Mrs. Moore's killer, be treated as predeceasing Mrs. Moore for purposes of the insurance policies. Under Kentucky law, where the beneficiary predeceases the insured, the insurance proceeds go to alternate beneficiaries in the policy. In the present case, however, the contingent beneficiaries in the policy are Mr. Moore's executors and administrators. He was alive at the time of his wife's death, and no executor or administrator of his will was in existence.

Nor were the proceeds payable to Mr. Moore's estate under the fictitious presumption that he predeceased the decedent. This was firmly established by Kentucky case law antedating the enactment of the forfeiture statute:

It has uniformly been held that a beneficiary under a contract of personal insurance who murders the insured cannot recover the policy benefits. Likewise, the estate of a primary beneficiary who murdered the insured and then committed suicide is not entitled to the policy proceeds. And this result has been reached even in the absence of a specific policy provision to this effect, on the basis of public policy.... [T]he proceeds of the policy (however) are not forfeited to the company but are payable, ordinarily, to the estate of the murdered insured.

1B Appleman, *Insurance Law and Practice* § 481–482 (1981). *See also National Life Ins. Co. v. Hood's Administrator, supra.*

The decision in *Bates v. Wilson,* 313 Ky. 572, 232 S.W.2d 837 (1950), relied on by taxpayer, is not to the contrary. The court there merely held that the daughter of a person convicted of feloniously killing his parents was entitled to inherit from her grandparents the interest in certain property which would have passed to her father had his interest not have been forfeited under K.R.S. § 381.280.

Equally without merit is taxpayer's alternative contention that the proceeds, even though payable to the decedent's legal heirs by virtue of the forfeiture statute, were not "receivable by the executor" within the meaning of Section 2042.

■ The executor relies upon this Court's statement in *Commissioner v. Jones,* 62 F.2d 496, 497 (6th Cir.1932) that " 'receivable by the executor' means only such insurance as comes into his hands for distribution as a part of the assets of the estate subject to the claims and charges that such assets are ordinarily subjected to in the administration of an estate." It asserts that under the forfeiture statute the insurance proceeds were payable directly to the decedent's heirs of law and that the proceeds thus would not have become assets of the estate subject to the customary claims and charges. The language of the forfeiture statute, however, does not support the proposition that the insurance proceeds would not be subject to claims and charges against the estate. The statute does not, as the executor suggests, provide for distribution of forfeited property directly to the decedent's "other heirs at law" but states rather that such property "*descends* to the decedent's other heirs-at-law, *unless otherwise disposed of by the decedent.*" Thus, to the extent decedent's will named a residuary legatee other than Mr. Moore, the insurance proceeds were payable under the forfeiture statute to the executor of her estate for distribution to such legatee or legatees subject to the payment of debts and other charges or claims against the estate. On the other hand, if Mr. Moore were the only named legatee, the proceeds would pass as intestate property to the decedent's heirs at law and, as such, would also be subject to any claims and charges against the estate. K.R.S. § 391.030(1).

## IV

■ We also adopt the language of District Judge Ballantine with respect to the taxation of the residence owned by Mrs. Moore and her husband as tenants by the entirety:

We turn next to the question of the residence. The habendum clause quoted above has the effect of creating a tenancy by the entirety. At the death of one of the grantees the whole estate belongs to the survivor absolutely. KRS 381.050; *Francis v. Vastine,* 229 Ky. 431, 17 S.W.2d 419 (1929). Once again, however, plaintiff is faced with the insurmountable barrier of Kentucky's Forfeiture Statute, KRS 381.280, supra. Having been convicted of a felony for taking the life of Mrs. Moore, Mr. Moore is barred from asserting any interest he would receive as a surviving tenant. *See Wilson v. Bates,* 313 Ky. 333, 231 S.W.2d 39 (1950); *Bates v. Wilson,* 313 Ky. 572, 232 S.W.2d 837 (1950).

The district court correctly construed the Kentucky forfeiture law. Therefore, the entire value of the residence is a part of the estate of Mrs. Moore.

The judgment of the district court, as amended on April 12, 1979, is affirmed. The parties will pay their own costs on this appeal.

### ADDENDUM

This case was heard on briefs and oral arguments of counsel on February 5, 1981. It was stated by counsel during oral argument that William B. Moore, who had been convicted of voluntary manslaughter of his wife, had petitioned the Circuit Court of Jefferson County, Kentucky, to vacate his conviction on grounds of newly discovered evidence. This Court postponed the making of a decision in the present case until final action by the Courts of the Common-

wealth of Kentucky in the new proceeding initiated by Mr. Moore.

This Court was informed that on July 28, 1981, the State Circuit Court vacated the conviction of William B. Moore and granted him a new trial. The Commonwealth of Kentucky perfected an appeal to the Court of Appeals of Kentucky.

On December 31, 1982, in Appeal No. 82–CA–85–MR the Court of Appeals of Kentucky rendered an opinion reversing the decision of the Circuit Court of Jefferson County, holding that the Circuit Court erred in granting vacation of the conviction. On April 11, 1984, the Supreme Court of Kentucky denied the motion of William B. Moore for a discretionary review of the decision of the Court of Appeals.

The opinion of the Court of Appeals of Kentucky in that case is as follows:

OPINION RENDERED: December 31, 1982; 10:00 a.m.
NOT TO BE PUBLISHED

COMMONWEALTH OF KENTUCKY
COURT OF APPEALS

NO. 82–CA–85–MR

COMMONWEALTH OF KENTUCKY                    APPELLANT

APPEAL FROM JEFFERSON CIRCUIT COURT

v.                    HON. ROBERT M. SPRAGENS,
SPECIAL JUDGE
INDICTMENT NO. 142639

WILLIAM BLANTON MOORE                    APPELLEE

---

**REVERSING**

Before HOGGE, WILHOIT and WINTERSHEIMER, Judges.

WINTERSHEIMER, Judge. This appeal is from an order entered July 28, 1981, vacating a ten-year-old manslaughter conviction and granting a new trial pursuant to CR 60.02.

The questions presented are whether the CR 60.02 motion was timely, whether the evidence relied upon by the circuit court was new or sufficient to vacate the conviction, and whether the issues were previously decided on direct appeal and whether the circuit court abused its discretion.

On December 9, 1970, Moore was indicted for willful murder of his wife on or about December 4, 1970. After a six-day trial, he was found guilty of voluntary manslaughter by a jury on June 12, 1971, and sentenced to 21 years in prison. In 1972, the then Kentucky Court of Appeals affirmed his conviction. The United States Supreme Court denied his petition for review in 1973 and denied a subsequent peti-

tion for rehearing. He began serving his sentence on May 22, 1973. On December 27, 1974, his sentence was commuted by then Governor Wendell Ford to time actually served, 19 months.

In November of 1977, Moore approached Dr. George Nichols to review the case and prepare a report. Dr. Nichols issued his report in 1979. The legal post-conviction attack was initiated on May 22, 1980, with an amended motion for relief from judgment pursuant to CR 60.02. A special judge was appointed, and he found that a new trial was in order because two of the medical experts who testified at the original trial had recanted their testimony in his opinion. Moore contends that the recent interpretation of the medical evidence by Dr. Nichols demonstrates that his conviction was a manifest injustice. Moore argues that his wife's death was as a result of an accident and was not a homicide. He says that the material presented by Dr. Nichols directly refutes the testimony of the two physicians who testified for the prosecution at the original trial.

There were no eye witnesses to Louisa Moore's death. The opinion testimony of the medical experts was the primary evidence tending to establish that a crime had been committed. The specific factual question is whether the victim accidentally struck her head in the bathroom or was killed by a series of blows. The special judge vacated the conviction and ordered a new trial. This appeal followed.

This Court reverses the order of the circuit court because there was an abuse of discretion in vacating the order. The evidence submitted by Moore was not new and was not sufficient to provide a basis for vacation of the conviction.

The prosecution has a statutory right to appeal an order granting a new trial pursuant to CR 60.02 because KRS 22A.020(4) provides the basis for such an appeal. The case of *Evans M.D. v. Commonwealth*, 29 Ky.Law Summ. 13, at 3, permitted an interlocutory appeal on a question of venue. The issue presented here is of equal importance to the correct and uniform administration of the law as enunciated by *Evans*. A similar position was outlined in *Commonwealth v. Harris*, 147 Ky. 702, 145 S.W. 387 (1912) and *Commonwealth v. Metcalfe*, 184 Ky. 540, 212 S.W. 434 (1919).

We are also persuaded by the rationale in *Commonwealth v. Cook*, 380 Mass. 314, 403 N.E.2d 363 (1980), in which the Massachusetts Supreme Judicial Court heard an appeal by the prosecution three years after a conviction. *Cook, supra,* reasoned that an appeal was appropriate to protect the efficient administration of justice and to avoid utilizing the resources of the Commonwealth to conduct an unnecessary retrial. Here the appellee exhausted his appeals of his original conviction. He has fully served his sentence.

The principal rationale for the trial court's ruling under CR 60.02 is whether the trial testimony of Drs. Boram and Lansing had been recanted or repudiated. A careful examination of the extensive record indicates that Dr. Lansing's testimony was far too complex to be totally recanted by the brief affidavit in this file. His statement is only that he has no medical opinion now. He did not recant the validity of the opinion he gave at the original trial. He has not changed his opinion that the wound of the size in this matter could not be caused by a fall. In his original testimony, Dr. Lansing indicated that a fall could have been responsible for the injuries but added that such a fall would have been violent, clearly suggesting some criminal activity.

Dr. Boram, who actually performed the autopsy, was merely trying to explain and clarify his original testimony in the letter he sent to the publication *Lab World*. It in no way showed that he intended to recant his testimony.

The testimony now presented by Dr. Nichols offers nothing new or extraordinary. He repeats the opinions presented at the original trial by all of the other medical witnesses. The various medical opinions as to the questions involved were submitted for jury consideration. The circuit court committed reversible error in holding that the evidence was sufficient to support a motion to vacate the conviction.

The circuit court abused its discretion in granting relief under CR 60.02. One of the most significant factors to be considered in exercising discretion is whether the accused had a fair opportunity to present his claim at the original trial. Here the report of Dr. Nichols does not lend any new insight to the original medical opinions. The relief requested under the rule cannot be granted except in the most unusual circumstances. We are not persuaded that such circumstances are present here.

Generally, new trials will not be granted because of newly discovered evidence which is merely cumulative or of an impeaching character. Any proposed new evidence should have a decisive influence upon the original material. *See, Morris v. Thomas*, Ky., 240 S.W.2d 99 (1951). A criminal judgment should not be set aside unless a showing is made of such a conclusive character as to indicate that the verdict most probably would not have been rendered and that there is a strong possibil-

ity of a miscarriage of justice. *Harris v. Commonwealth*, Ky., 296 S.W.2d 700 (1956). We are not convinced that those conditions are present here.

There must be a demonstration of extraordinary circumstances and the record must show that the accused was treated unfairly. *See, Lewallen v. Commonwealth*, Ky.App., 584 S.W.2d 748 (1979). The establishment of the corpus delicti was not limited to medical testimony. Photographs of the very bloody bathroom were presented. Pictures of the severe head wound, as well as the testimony of the accused, all permit the jury to make a reasonable inference from the evidence before it.

Consequently, it was error on the part of the circuit court to grant the vacation of the conviction. No truly new evidence which would warrant the disturbing of the original jury verdict was presented.

In view of our decision, it is not necessary to address the issue of the timely presentation of the CR 60.02 motion.

The order of the circuit court is reversed.

ALL CONCUR.