United States Court of Appeals,

Eleventh Circuit.

No. 95-5446.

Adam C. ABRAMS, Plaintiff,

v.

Samuel E. TRUNZO, Precision Leasing, Inc., a Florida Corporation, et al., Defendants,

United States of America, Defendant-Third-Party Plaintiff-Appellant,

United Services Automobile Association, Defendant-Third-Party Defendant-Appellee.

Nov. 20, 1997.

Appeal from the United States District Court for the Southern District of Florida. (No. 91-2810-CIV-SH), Shelby Highsmith, Judge.

Before TJOFLAT and BARKETT, Circuit Judges, and GODBOLD, Senior Circuit Judge.

BARKETT, Circuit Judge:

In 1987, Samuel Trunzo, a Lieutenant Colonel in the United States Air Force, driving a rented automobile while on temporary assignment in Miami, was involved in an auto accident. Adam Abrams sued Trunzo for personal injury caused by the accident. Because Trunzo was operating the vehicle within the scope of his government employment, the United States was substituted as defendant in the action.[1] Judgment was entered against the United States in the amount of $164,549.68. The United States sought indemnification from USAA, Trunzo's insurance carrier at the time of the accident. USAA denied the government's claim, and this suit followed. The facts were uncontroverted, and both sides moved for summary judgment. Defendant's motion,

---

[1]The Drivers Act, codified at 28 U.S.C. § 2679(b), amended the Federal Torts Claim Act (FTCA), 28 U.S.C. §§ 2671-80(1994), to require substitution of the United States as a party in a civil suit against a government driver for a traffic accident occurring while the employee was operating the vehicle within the scope of employment.

based on its contention that the government had hired the rented auto and was thus excluded from coverage under the policy, was granted. The government's motion was denied. We affirm.

The sole issue before this court is whether the United States is a "covered person" within the meaning of Trunzo's personal insurance policy. In addition to covering Trunzo's insured vehicle, the policy provides liability coverage for automobiles driven by Trunzo unless the person or organization seeking coverage hired or owned the automobile involved in the accident. Specifically, the policy provides:

> We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident ... [A covered person is] [f]or any auto or trailer, other than your covered auto, any person or organization but only with respect to legal responsibility for acts or omissions of you or any family member for whom coverage is afforded under this part. This provision applies only if the person or organization does not own or hire the auto or trailer.

In granting USAA's summary judgment motion, the district court held that "the United States actually hired the vehicle, either directly or through the actions of its agent, Trunzo" and that the Government therefore was not a "covered person" entitled to indemnification pursuant to the terms of Trunzo's insurance policy. On appeal, the government contends federal law defines whether the government hires or acquires a vehicle and, by those terms, the United States did not hire the rented car and thus qualifies as a covered person under Trunzo's insurance policy.

We must first decide whether to apply federal law or California law in interpreting the provision. While the Federal Torts Claim Act (FTCA) contains directives about which substantive law to apply in litigation under the statute (liability attaches to the United States in accordance with the law of the place where the tort occurred), it does not directly address which law to apply in claims for indemnity that derive from FTCA suits. 28 U.S.C. § 1346(b)(1994). This Circuit recently explained the doctrine under which federal law should be substituted for state law:

The Supreme Court has identified three categories of preemption: (1) "express," where

> Congress "define[s] explicitly the extent to which its enactments pre-empt state law," (2) "field," in which Congress regulates a field so pervasively, or federal law touches on a field implicating such a dominant federal interest, that an intent for federal law to occupy the field exclusively may be inferred; (3) "conflict," where state and federal law actually conflict, so that it is impossible for a party simultaneously to comply with both, or state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Preemption of any type "fundamentally is a question of congressional intent."

*Teper v. Miller,* 82 F.3d 989, 993 (11th Cir.1996) (citations omitted). The government argues that federal procurement law preempts California state law in interpreting the private contract at issue because the contract provision implicates an area of unique federal interest, namely "the power to determine the conditions under which it may be held to have contracted for the purchases of goods and services." In addition, the government suggests that applicable state and federal law conflict in ways which make it impossible to comply with both.

The government has misapprehended the federal interest in this matter. We are not asked to address contractual issues between the rental agency and the federal government; we are asked to determine the government's right to recover as a third-party beneficiary to the insurance agreement between Trunzo and his personal insurance carrier, USAA. The "litigation before us raises no question regarding the liability of the United States or the responsibilities of the United States" under any contract. *Miree v. DeKalb County, Georgia,* 433 U.S. 25, 28-29, 97 S.Ct. 2490, 2493, 53 L.Ed.2d 557 (1977). Rather, the litigation involves the liability of Trunzo's insurance carrier for Trunzo's accident. The true federal interest here is the recovery of the money paid to Abrams on Trunzo's behalf. The government thus fails to demonstrate that this dispute implicates a unique federal interest or to identify federal law that is applicable to the resolution of this dispute. On the other hand, the state has a "substantial interest in having contracts construed according to established law, as the original parties would intend." *Industrial Indemnity Insurance Co. v. United States,* 757 F.2d 982, 985 (9th Cir.1985).

The consideration of that substantial interest has led Federal courts to apply state law in most third-party claims for indemnity or contribution derived from the FTCA. See, e.g., *United States v. GEICO,* 612 F.2d 705, 706 (2d Cir.1980) (applying regulations of New York State Insurance Dept. in a suit by the United States for indemnity); *Rudelson v. United States,* 602 F.2d 1326, 1333 (9th Cir.1979)(United States is liable under California's comparative negligence system); *Certain Underwriters at Lloyd's v. United States,* 511 F.2d 159, 161 (5th Cir.1975)(law of Louisiana governs United States duty to pay contribution after settlement); *Ingham v. Eastern Air Lines,* 373 F.2d 227, 240 (2d Cir.). cert. denied, 389 U.S. 931, 88 S.Ct. 295, 19 L.Ed.2d 292 (1967)(state law applied to United States claims for indemnity).

More relevant here, when the federal government has sought indemnification as a third-party beneficiary to an insurance contract, federal courts in other circuits have applied state law. *See, e.g., United States v. Government Ins., Co.,* 461 F.2d 58 (4th Cir.1972); *First Kentucky Trust Co. v. United States,* 737 F.2d 557, 560 (6th Cir.1984); *United States v. State Farm Mutual Automobile Ins. Co.,* 455 F.2d 789, 790-92 (10th Cir.1972); *United States v. Nationwide Mutual Ins. Co.,* 499 F.2d 1355, 1356-58 (9th Cir.1974); *Industrial Indemnity Co. v. United States,* 757 F.2d 982, 985 (9th Cir.1985). However, in two cases, the Supreme Court applied federal law to assess third-party claims by the United States for indemnification. In *United States v. Seckinger,* 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970), the Court applied federal law to defeat a third-party claim for indemnity by the United States against a federal government contractor. The case involved an employee of a government contractor who, after suffering a severe electrical shock, filed a negligence suit against the United States under the FTCA. After judgment for the employee, the United States sought indemnification from the contractor based on a clause in the contract between the contractor and the government. The Court held that federal law controlled the interpretation of

the contract because it "was entered into pursuant to authority conferred by federal statute and, ultimately, by the Constitution." *Id.* at 209-10, 90 S.Ct. at 884.

In *United States v. Gilman,* 347 U.S. 507, 74 S.Ct. 695, 98 L.Ed. 898 (1954), a government employee, driving a government vehicle, was involved in a car accident. The plaintiff successfully sued the United States. The government then filed suit for indemnification against the government employee. The district court applied state law and found the employee liable for indemnity. The Supreme Court reversed, holding that because the claim was against the employee, and not against the United States, the FTCA did not cover the action. The Court discussed legislative history of the FTCA which indicated that Congress did not intend to allow the government to sue its employees for indemnity or contribution. The Court declined to apply state law favoring indemnity and denied recovery by the United States on the claim.

The instant case is easily distinguished from both *Seckinger* and *Gilman.* Unlike the former, this case does not involve a federal government contract and its interpretation; it revolves around the meaning of a provision in a private insurance contract between Trunzo and his insurance policy with USAA. Contrary to the government's assertions, the case does not offer the possibility of subjecting federal government authority to local control. In *Gilman,* a strong policy interest in preventing the government from seeking indemnity against its own employees, an interest apparent in the FTCA's legislative history, defeated the application of state law. While this case does not implicate that policy interest, the government insists that another strong federal interest—federal control over its procurement policies and procedures—should compel the application of federal law in this dispute. As noted previously, however, we reject the government's description of the nature of the federal interest at stake in this case and, thus, find the application of state law appropriate.

Accordingly, we turn to the question of whether, under California law, the United States

"hired" the rented vehicle within the meaning of Trunzo's insurance policy with USAA. For purposes of interpreting that California policy, the United States can be deemed to have hired the car if, according to California law, Trunzo acted as its agent, and with actual authority. USAA argues that the car rental was within the course and scope of Trunzo's agency because "the act was done in the prosecution of the business in which the servant was employed to assist." *Kinney v. Vaccari,* 27 Cal.3d 348, 165 Cal.Rptr. 787, 790, n. 2, 612 P.2d 877, 879, n. 2 (1980). We agree with USAA that, pursuant to California law, the government hired the car through Trunzo, who acted with the government's implied, actual authority.

Pursuant to California law, "[a]ctual authority is such as a principal intentionally confers upon the agent, or intentionally, or by want of ordinary care, allows the agent to believe himself to possess." Ca. Civil Code § 2316. California courts have made clear that actual authority may be implied as well as express. *Hobart v. Hobart Estate Co.,* 26 Cal.2d 412, 418, 159 P.2d 958 (Cal.1945); *Transport Clearings-Bay Area v. Simmonds,* 226 Cal.App.2d 405, 425, 38 Cal.Rptr. 116 (Cal.Ct.App.1964). Furthermore, "[a]n agent has authority ... [t]o do everything necessary or proper and usual, in the ordinary course of business, for effecting the purpose of his agency...." Ca. Civil Code § 2319.

On the facts of this case, it is clear that Trunzo exercised implied, actual authority, and that the government therefore hired the car through his actions. Trunzo's sole reason for requiring the use of a rental car is a direct result of his military orders. His travel orders included specific instructions to rent a car from Holiday Payless Rent-A-Car. The car was reserved by the Scheduled Airline Traffic Office (SATO) at McClellan Air Force Base in California. Holiday Payless had negotiated an agreement with the U.S. to rent cars on special terms to Government employees on official business. The agreement with Payless provides for discounted car rental rates, establishes

a toll free number for reservations, dispenses with the usual requirement of a credit card or cash security deposit, specifies that "[g]overnment travelers on official business will not be subject to any fee for Collision Damage Waiver, and ... will not be subject to any collision damage responsibility," provides for free liability insurance for the government and its employees, puts on Payless "the entire risk of direct loss of or damage to the vehicles," and provides for payment by cash, check, or credit card and "[c]entral billing to government agencies ... if prior arrangements have been made between the agency and the rental locations." The agreement was negotiated by the Military Traffic Management Command (MTMC) in 1986. Moreover, pursuant to the MTMC agreement with the rental car company, the Government could have arranged for direct billing for the car. Though the Government reimbursed Trunzo for the cost of the rental car and gas and no direct billing occurred here, the existence of the option further illustrates the level of control that the Government had over the transaction, and over Trunzo. Pursuant to that agreement, Trunzo indicated on the rental form that he was renting the car for official military business, relieving him of the responsibility of leaving a security deposit. California agency law mandates that Trunzo had implied, actual authority to hire the car, and that therefore the rental can be imputed to the Government. Accordingly, the government is not a "covered person" within the meaning of Trunzo's insurance policy.

AFFIRMED.

TJOFLAT, Circuit Judge, dissenting:

I respectfully dissent.

The question before us is whether the United States "hired" the vehicle that collided with Adam Abrams. If it did, it is not a "covered person" under the driver's insurance policy, and we must affirm the district court's denial of the United States' motion for summary judgment seeking indemnification from the driver's insurer, USAA. The majority has concluded that the United States

hired the car from Payless car rental agency. I would hold otherwise. For an entity to hire a vehicle, it must contract for that vehicle. For us to find that the United States hired the automobile from Payless, therefore, USAA must show that a contract existed between the United States and Payless. It has not done so.

The United States enters into contracts pursuant to federal statutory and regulatory authority; any contract formed contrary to such authority is null and void. *See, e.g., S.J. Amoroso Constr. Co., Inc. v. United States,* 12 F.3d 1072, 1075 (Fed.Cir.1993) (explaining that the United States is neither bound nor estopped by agents acting beyond their authority or contrary to statute or regulations); *Hercules Inc. v. United States,* 25 Cl.Ct. 616, 633 (1992) ("[T]he United States cannot be bound by a contract ... into which its agents were without the legal authority to enter."), *aff'd* 24 F.3d 188 (Fed.Cir.1994), *aff'd,* --- U.S. ----, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996). USAA argues, and the majority holds, that the United States hired the Payless car through its agent, Lieutenant Colonel Trunzo. To contract for goods and services (including rental cars), however, the United States must act through a statutorily authorized "contract officer." *See* 48 C.F.R. § 1.601 (1997). No agent of the United States other than a contracting officer may contract for the United States. *See, e.g., Modern Sys. Tech. Corp. v. United States,* 979 F.2d 200, 204-05 (Fed.Cir.1992) (noting that Postal Service employee's statements could not represent contractual intent of Postal Service because employee was not contracting officer). Contract officers, including members of the armed services delegated "micro-purchase" authority, must be appointed in writing in accordance with regulatory procedures. *See* 48 C.F.R. § 1.603-3 (1997). There is nothing in the record even to suggest that Lieutenant Colonel Trunzo was a duly appointed contract officer carrying out contract officer duties. He thus could not have created a contract binding on the United States under current regulations.

The majority reasons that, under California law,[1] Trunzo had the "*implied,* actual authority" to contract on behalf of the United States for a car from Payless. *Supra* at 721.

The ability of a federal agent to bind the United States by implied authority, however, is closely circumscribed. The burden of proving implied authority rests with the party claiming the existence of a contract, *City of El Centro v. United States,* 922 F.2d 816, 820-21 (Fed.Cir.1990) (citation omitted). Thus "the standard presumption to be followed, both by contractors and by the Court, is that a Government official has no contracting authority unless otherwise expressly bestowed." *Garza v. United States,* 34 Fed.Cl. 1, 20 (1995). Before implied authority can be invoked, the agent must first possess express actual authority in the subject area at question. *See, e.g., San Pedro v. United States,* 79 F.3d 1065, 1069-70 (11th Cir.), *cert. denied,* --- U.S. ----, 117 S.Ct. 431, 136 L.Ed.2d 330 (1996) (holding that U.S. attorneys may have implied authority to plea bargain as an integral part of their express authority to prosecute, but that they do not have the implied authority to bind the INS by a plea bargain concerning deportation because the INS has express authority over deportation proceedings); *City of El Centro,* 922 F.2d at 821 (finding that border patrol agents had no implied authority to obligate U.S. funds for medical services provided to injured aliens when agents who purportedly agreed to make payment had no "care-providing duties"). This is because implied authority generally arises only "when such authority is considered to be an integral part of the duties assigned to a [g]overnment employee." *H. Landau & Co. v. United States,* 886 F.2d 322, 324 (Fed.Cir.1989) (citation and internal quotation marks omitted).

USAA presents no evidence, and I find none in the record, to suggest that Lieutenant Colonel

---

[1]The majority characterizes the issue before the court as one of conflict of laws. There is no conflict here, however: the existence and terms of federal contracts are governed entirely and solely by federal law. A state may not apply its own law to create a contract that binds the United States.

Trunzo's duties as a non-contract officer for the Air Force involved the making of contracts; indeed, they could not under federal regulations. There is also no evidence establishing that Trunzo was responsible for procuring transportation for the Air Force, a responsibility that could have involved contracting duties. He therefore could not have possessed the implied authority to bind the United States to a contract to rent a car from Payless.

There being no other possible source of a contract between the United States and Payless,[2] I would reverse the district court's grant of summary judgment for USAA as well as the denial of summary judgment for the United States. Government employees form personal contracts for goods and services every day. To hold that those contracts somehow bind the federal government would subject the United States to a perpetual threat of litigation from any business that deals with federal agents. Because the United States did not contract to hire a car from Payless, I would hold that the United States is a "covered person" under Trunzo's personal insurance policy and is entitled to indemnification from USAA for the amount paid to Abrams because of Trunzo's negligence.

---

[2]At one point in the litigation, USAA claimed that an agreement between the United States and Payless providing government employees with discount rates was actually a contract obligating the United States to rent Payless cars. The district court appears to have been persuaded by this argument when it held that "the United States actually hired the vehicle, *either directly* or through the actions of its agent, Trunzo." (emphasis added). The United States-Payless agreement, however, states in its first paragraph that "[t]he Government ... [is] not obligated to purchase any services offered by [Payless] under the terms of this agreement." I fail to see how the employee discount agreement could be construed as a contract to rent cars even without this quoted language. In light of the disclaimer, USAA certainly cannot argue that the United States intended to contract with Payless for automobiles.